THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MICHAEL RAWLINS, Appellant.

First Department, May 9, 1991

APPEARANCES OF COUNSEL

*Pamela Peters* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Myles L. Orosco* of counsel *(Norman Barclay* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SMITH, J.

■ ■ The issues in this appeal are the sufficiency of the court's charge on the credibility of witnesses and on circumstantial evidence. Because we believe the charge was deficient in both respects, we reverse.

The People's case established the following. On April 3, 1987 at approximately 3:30 A.M. uniformed security guards Joseph Lombardo and Patricia Rivera were dispatched by Holmes Protection Service to Rafael's Restaurant, located on West 54th Street in Manhattan, in response to a silent burglar alarm. Lombardo and Rivera arrived at the restaurant in separate vehicles approximately eight minutes later. Both officers observed the defendant ascending the staircase from the restaurant to the street level. The lighting conditions were good. Rivera testified that the defendant was carrying a beige box which he dropped under a tree 8 to 10 feet from the restaurant. As Lombardo radioed his office, he heard something metallic hit the ground. After dropping the box, the defendant proceeded to walk west on 54th Street toward 6th Avenue. Police Officers John Eterno and Daniel Hamill responded to the scene. Eterno observed the defendant walking quickly by him toward 6th Avenue. Upon inspection of the restaurant, the security guards determined that two windowpanes had been broken. Lombardo stated to the police, "I have a break-in. Grab him," pointing to the defendant. Defendant was apprehended by the police at the corner. He was not handcuffed at this point. Two silver dining knives were recovered from the defendant's fists. Lombardo recovered a locked cashbox from a flower bed in front of the restaurant, showed it to the police then both security guards positively identified the defendant who was then arrested.

The restaurant owner arrived on the scene, indicated that he had neither seen the defendant before nor authorized him to enter the restaurant after hours, identified the cashbox and the knives as being from the restaurant (silver tray next to

the door was missing some knives) and noticed it appeared that the knives had been used in an attempt to force open the cashbox. The owner indicated that there was some other minor damage inside the restaurant and that no cash had been taken.

The defendant did not present any evidence.

The jury returned a verdict of guilty of burglary in the third degree, the sole count in the indictment.

The court's credibility charge provided in pertinent part:

"Sometimes a witness in this case or in a case has a real interest in how the case comes out, a very strong psychological interest, a very strong emotional interest. Sometimes they don't. Even when somebody does have an interest, the law says there is no presumption that that person lied and *the law also says a person who has no interest in how a case comes out tells the truth.* In other words, some person may have a real interest in how the case comes out and be very truthful and the reverse may be true. That's all for you to decide.

"If a person had a motive to lie, did he actually lie. Sometimes a person has a motive to lie but he doesn't lie. * * *

"Now we had policemen testify. Let me assure you as we spoke about earlier during the trial that you are to treat each person as any ordinary person. The fact that somebody has a uniform or has a certain profession or is of a certain sex or whatever factor one may think of, doesn't necessarily mean that you have to automatically accept the testimony of that person, nor the flip side is you automatically reject that person's testimony.

*"You used the fact that somebody is a policeman, you can weigh that in determining his credibility—or security guards in this case. But you are not to automatically accept or reject that person's testimony.*

"Analyze and evaluate the testimony with your common sense and with some of the factors that I outlined before in assessing whether you believe that person." (Emphasis added.)

The defendant challenges the credibility charge on at least two grounds: (1) the misstatement of law that "the law also says a person who has no interest in how a case comes out tells the truth"; and (2) the instruction that the jury could consider that a person was a police officer or security guard in weighing his credibility.

■ The trial court's instruction that, as a matter of law, a

disinterested witness tells the truth is erroneous and warrants reversal. *(See, People v Whitmore,* 123 AD2d 336 [1986].) The People contend that this was simply a misstatement that was effectively cured by the remainder of the charge. We disagree. This misstatement of law was brought to the attention of the trial court which denied it had made the statement and left it uncorrected. The court's charge that the jury could consider the fact that the witnesses were police officers or security guards improperly conveyed to the jury that their testimony should be given greater weight than that of the ordinary witness. *(People v Gadsden,* 80 AD2d 508 [1981]; *People v Aiello,* 58 AD2d 875 [1977].)

The court gave the following circumstantial evidence charge, in pertinent part:

"In the law basically, there are two types of evidence they speak about. One is direct evidence and one is circumstantial evidence; and *you may draw a conclusion that in this case you found both or you didn't find both, but there may or may not; perhaps, there is both.*

"The two evidence—two broad areas of evidence consist on the one hand direct and on the other hand circumstantial evidence *[sic].* Direct evidence is essentially evidence you could see, observe, hear with your senses. Circumstantial evidence is not something that one observes; but from facts one can draw a conclusion *[sic].*

"For instance, if I have a knife in my hand, and I pierce the knife through somebody's heart; and a man over there sees me take the knife, pierce it in his heart *[sic].* He sees the man fall down. He sees blood gushing from him and he sees the man expired, and sees me with that knife and then he sees me run away.

"He comes to court and he testifies as to that. He is giving testimony as to direct *[sic].* He saw it with his naked eye. Either you believe him or don't believe him in whole or in part; and do you believe him, actually, he saw me do it or whatever it is you have to believe him or you don't in whole or in part *[sic].* That's direct evidence.

"Circumstantial evidence consists of something else. The same fact situation but a difference *[sic].* That man in the back didn't see me pierce the knife into his heart *[sic].* When he came, he saw a dead body. He saw a body. He saw blood still coming from the body. He saw me holding a knife in my hand. He saw the blood gushing from my hand, and he sees

nobody else there; but he didn't see me strike the knife into his heart *[sic]*. He comes to court and he testifies. He says, Hornblass is the killer, and he is saying although I didn't see it, it's circumstantial evidence *[sic]*.

*"Now, in a case where the prosecutor seeks to have you draw the conclusion that a person did a crime, but there is perhaps no eyewitness to the actual crime, you have to be convinced beyond a reasonable doubt that there is no stone unturned so in my case, in my murder case where I had the weapon in my hand, you have to be convinced there is no other possibility other than the fact I was the one who committed the crime that I pierced the knife [sic]*.

"That's the standard that you use because nobody saw it, so you have to be convinced that I'm the person who did it. Now, is it enough to say well, I had the knife, and it's bloody whatever it is, and the body is there to say I was the one who did it? *[sic] It's in determining a case where there is evidence other than direct evidence, you have to be convinced beyond a reasonable doubt that the person committed the crime and that the crime was committed"* (emphasis added).

Defendant contends that the circumstantial evidence charge failed to convey the necessary standard for analyzing circumstantial evidence and that the hypothetical used by the trial court to explain circumstantial evidence was highly inflammatory and prejudicial. At trial, the defense objected to this charge on the grounds that it failed to instruct the jury that it must find that each circumstantial fact must be proved by direct evidence and that the hypothetical was prejudicial because it was too close to the facts of this case.

■ The circumstantial evidence charge was deficient in several respects. The court would have been aided by a reference generally to 1 CJI(NY) 9.05 on circumstantial evidence. That charge contains a number of suggestions for a circumstantial evidence charge. First, the charge should include a statement that the People have to prove beyond a reasonable doubt "circumstantial facts", which do not, in and of themselves, establish guilt. The circumstantial facts have to be established by direct evidence. Second, the circumstantial facts must justify the conclusion of guilt beyond a reasonable doubt. Third, the inference of guilt "must flow naturally, reasonably and logically from the facts proved and must be consistent with all such facts proved." Fourth, the "circumstantial facts proved must all be consistent with guilt and

inconsistent with innocence." Fifth, the "circumstantial facts proved must exclude to a moral certainty every hypothesis but guilt." *(See,* 1 CJI [NY] 9.05.)

With respect to the circumstantial evidence charge, we note the following. First, the trial court erred in failing to instruct the jury that this was, at least in part, a circumstantial evidence case. *(People v Sanchez,* 61 NY2d 1022, 1023 [1984].) However, that ground was not raised below. Second, there was no discussion concerning circumstantial facts and of the requirement that they be proved beyond a reasonable doubt. Third, although not raised at trial, the charge failed adequately to convey the exclusion concept. *(See, People v Ford,* 66 NY2d 428, 442-443 [1985]; *People v Livingston,* 157 AD2d 859 [1990].) Whereas "moral certainty" need not be used, the "jury should be instructed in substance that it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence." *(People v Sanchez, supra,* 61 NY2d, at 1024 [1984].) To the extent that some specific objections on the circumstantial evidence charge were not made, we reach them in the interest of justice.

Based upon the foregoing, despite legally sufficient evidence of defendant's guilt *(see, People v Lowman,* 137 AD2d 622 [1988]), reversal is required and a new trial must be held because of the charge on the credibility of witnesses. The errors cited therein, combined with the deficient charge on circumstantial evidence, require reversal on the law and in the interest of justice. *(See, People v Ochs,* 3 NY2d 54 [1957]; *People v Gadsden, supra.)*

Accordingly, the judgment of the Supreme Court, New York County (Jerome Hornblass, J.), rendered on November 17, 1987, convicting defendant, after trial by jury, of burglary in the third degree, and sentencing him as a predicate felon to 2½ to 5 years' imprisonment, is unanimously reversed, on the law, and as a matter of discretion in the interest of justice, and a new trial ordered.

MILONAS, J. P., ROSS, KASSAL and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on November 17, 1987, unanimously reversed, on the law, and as a matter of discretion in the interest of justice, and a new trial ordered.