■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER STINSON, Appellant.—Judgment, Supreme Court, New York County (Jerome Hornblass, J.), rendered February 5, 1991, convicting defendant, after a jury trial, of robbery in the first degree (Penal Law § 160.15 [3]) and assault in the second degree (Penal Law § 120.05 [2]), and sentencing him, as a predicate felony offender, to concurrent, indeterminate terms of imprisonment of from six to twelve years and from four to eight years, respectively, is reversed, on the law, and the matter remanded for a new trial.

By Indictment No. 2852/90, defendant was charged with robbery in the first degree, robbery in the second degree, assault in the second degree, and criminal possession of a weapon in the third degree. The charges stemmed from a March 5, 1990 incident in which defendant stabbed another man during an altercation over a brown paper bag containing a vial of pills. After the stabbing, defendant fled with the pills and was apprehended in the vicinity within minutes. A knife, containing no blood on its blade, was recovered in front of an alleyway passed by defendant.

Following a one-week trial commencing November 13, 1990, the jury convicted defendant of robbery and assault, and acquitted him of the weapon possession charge. On appeal, defendant claims error in the trial court's charge and repugnancy in the jury's verdict. We reverse.

Prior to submission of the case to the jury, the Trial Judge, without request, charged with respect to defendant's decision not to testify as follows: "The defendant doesn't have to prove or disprove anything and the fact that the defendant did not take the stand cannot be held against him. That's his absolute right. In a sense by not taking the stand, the defendant presents to you his view that he is not guilty of the charges and since the burden is on the prosecutor to prove guilt, his silence cannot be taken in any way in a negative way, and you cannot draw any inference from his silence of guilt.

Indeed, you cannot draw any inference at all. Most especially you cannot hold it against him."

CPL 300.10 (2) provides that "[u]pon request of a defendant who did not testify in his own behalf, but not otherwise, the court must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn." While declining to read this statute as one which establishes "an absolute prohibition against the court exercising its discretion in submitting such a charge" absent a request, the Court of Appeals has cautioned that such discretion "should be rarely exercised" *(People v Vereen,* 45 NY2d 856, 857).

More critical to this appeal, however, is a matter which we have commented upon with disfavor in three other appeals of trials presided over by this particular Trial Judge, namely, the practice of elaborating upon the language of CPL 300.10 (2). In accordance with this statute, 1 CJI(NY) 7.05 suggests that the following simple, two sentence instruction be given, with no embellishment, to the jury: "The defendant did not testify in this case. I charge you that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn."

As in *People v Garcia* (160 AD2d 354, *appeal dismissed* 76 NY2d 934, *rearg denied* 76 NY2d 1018), we hold that the no adverse inference charge utilized by the instant Trial Judge unacceptably exceeded the simple CJI charge language derived from CPL 300.10 (2) and, in so doing, drew excessive attention to defendant's decision not to take the stand. Indeed, as appellate counsel demonstrates with clause-by-clause comparisons, the language utilized here is substantially similar to that which occasioned reversal of this Trial Judge in *People v Wright* (174 AD2d 522).

Most recently, in *People v Nunez* (182 AD2d 527), we reiterated that it is "the more advisable practice * * * for the [trial] court to give the charge as set forth in the Criminal Jury Instructions", citing *People v Lara* (148 AD2d 340, *affd* 75 NY2d 836). In a concurring opinion, Justice Sullivan aptly observed that, "while there is always room for judicial innovation in the conduct of a trial, a Judge should think long and hard about the wisdom of departing from the standard charge on such elementary matters as reasonable doubt, burden of proof and a defendant's decision not to take the stand." *(Supra,* at 528.)

In short, a Trial Judge can best avoid error by delivering

the standard charge. As we wrote in *People v Jones* (181 AD2d 463), another recent appeal raising this issue: "The guiding principle for a charge on this subject should be that it is 'unnecessary for the trial court to embellish' the wording of the statute *(People v Gonzalez,* 72 AD2d 508). The rule has long been established that it is never necessary to add anything to the plain and simple language of the statute on the subject of a criminal defendant's failure to take the witness stand *(People v Manning,* 278 NY 40)."

Unlike in *Nunez (supra),* the error in the case at bar was preserved by objection when defense counsel took issue with the Judge's failure to give "the standard charge", noting the court's confusing "references to things from the subway to polio to Lotto to the George Washington Bridge," and specifically pointing out that a "great deal of time and effort is put into the exact specific wording of * * * the inference charge."

This latest instance of fatal enhancement of charge language on the part of the Trial Judge was compounded by error in the presumption of innocence charge which followed it. The Judge instructed with respect to that principle by stating: "The defendant, because he's presumed innocent, if there are inferences that are equal inferences, one that leads you to conclusion that he's guilty and another that leads you to the conclusion that he's not guilty and they are equal inferences, the defendant is entitled under those circumstances to the inference that he's not guilty. However, if the track is not equal and you cannot say that they are equal inferences, that they lead you to similar conclusions, the defendant then is not necessarily entitled to the inference that he's not guilty and you draw your conclusions accordingly."

The allusions to "equal inferences" and "equal tracks" in this charge pose the same risk recognized in "scales are even" language, namely that, if instructed that a defendant should be acquitted "if the scales are even", a jury may draw the negative implication that, if the scales are *not* even, there is enough evidence to convict *(see, People v Fox,* 72 AD2d 146, 147-148; *People v Smith,* 121 AD2d 411).

With respect to defendant's claim of repugnant verdict, predicated upon his having been acquitted of the weapon possession charge while convicted of robbery and assault with the use of a knife, we find that defendant waived the claim as a matter of law by failing to raise it prior to the discharge of the jury (CPL 310.50; *People v Alfaro,* 66 NY2d 985, 987; *People v Satloff,* 56 NY2d 745), and decline to reach it in the interest of justice. Concur—Carro, Kassal and Smith, JJ.

Sullivan, J. P., dissents in a memorandum as follows: As inartful and confusing as are the overly expansive jury instructions involved herein, replicated in countless other cases involving this particular court, and the subject of criticism *(see, e.g., People v Nunez,* 182 AD2d 527, *lv denied* 80 NY2d 836), as well as reversal *(see, e.g., People v Garcia,* 160 AD2d 354, *appeal dismissed* 76 NY2d 934; *People v Wright,* 174 AD2d 522; *People v Jones,* 181 AD2d 463), I do not believe that reversal is called for in this instance. Except for one objection as to the "manner" in which the court drew analogies, defendant failed to register any objection at all to the charge. Thus, he has failed to preserve for appellate review as issues of law those portions of the charge the majority now cites as error. *(People v Autry,* 75 NY2d 836; CPL 470.05 [2].)

Although defendant never requested a "no inference" charge, which, unless requested, should not be given, there is no "absolute prohibition against the court exercising its discretion in submitting such a charge without a request." *(People v Vereen,* 45 NY2d 856, 857.) A trial court should, however, exercise its discretion sparingly in this regard. *(Supra.)* Here, although the court solicited exceptions, defendant never excepted or voiced any objection to the no inference charge. Contrary to the majority's view, defense counsel's reference after the charge to "the inference charge", was not, as any trial lawyer would know, a reference to the "no inference" charge, which is a term of art and reflects an entirely different concept. That defense counsel was not referring to the no inference charge is apparent from the fact that his "inference charge" remark immediately followed and must be viewed in the context of his objections to the court's "subway", "polio", "Lotto" and "George Washington Bridge" analogies, which were used to explain the concepts of reasonable doubt or reasonable inferences. Those analogies have nothing to do with a defendant's decision not to testify. Nor does counsel's general objection to the court's failure to give the "standard charge" preserve any issue with respect to the no inference charge. Indeed, given his trial strategy, it is obvious that defendant welcomed such a charge despite the absence of a record request. In summation, defense counsel reminded the jurors that, during jury selection, they had promised that they "would not hold it against [defendant]" if he failed to testify; that they "would not go back [during deliberations] and say * * * 'well, if [defendant] really were innocent, why didn't he get up on the witness stand. If he were really innocent, why doesn't he say something? Why doesn't he protest?' " Counsel

asked the jurors to "hold to" their promises. From these remarks, it is fairly inferable that counsel wanted a no inference charge. In any event, the charge could only have strengthened defendant's tactical position since it implicitly placed the authority of the court squarely behind defense counsel's argument in that regard.

Nor was the content of the court's no inference charge improper, as the majority holds. In any event, as already noted, defendant did not object to the court's language, thus that claimed error is unpreserved as well. Nor is it surprising that no objection was taken, since the charge correctly stated the applicable principles of law. In instructing the jurors that "the fact that the defendant did not take the stand cannot be held against him", the court complied with CPL 300.10 (2). It also properly charged that the jurors could not "draw any inference from [defendant's] silence of guilt." The court concluded this portion of the charge by stating, "Most especially you cannot hold [defendant's silence] against him." Each of these statements was correct and defendant does not argue otherwise.

Rather, he argues, and the majority accepts, that the court's charge was too expansive and thus drew excessive attention to his silence. This claim has no merit. There is no absolute prohibition against embellishment which makes the language of CPL 300.10 (2) more easily understood. *(See, e.g., People v Gonzalez,* 72 AD2d 508 [three pages of embellishment]; *see also, People v Lara,* 148 AD2d 340, *affd* 75 NY2d 836.) More extensive language can more effectively reinforce a point favorable to the defendant *(see, People v Hoch,* 150 NY 291, 307).

Of course, a no inference charge should not draw undue attention to the defendant's silence *(People v Wright,* 174 AD2d 522, 523, *supra),* or suggest that he should have testified *(People v Garcia,* 160 AD2d 354, 356, *supra).* This charge did neither. All of the court's remarks on the subject represented accurate statements of the law. There was no suggestion that defendant's decision not to testify was a "tactical maneuver", rather than the exercise of a right. Nor is there any reason to believe that the mere expansion of the statutory language caused the jurors to reject the plain meaning of the court's remarks. Indeed, defense counsel's failure to object speaks volumes as to whether the charge, was not, in fact actually beneficial to defendant.

Unlike *People v Wright* (174 AD2d 522, *supra)* and *People v Garcia* (160 AD2d 354, *supra),* relied upon by the majority,

there is no suggestion here that, by not testifying, defendant would avoid aiding or encouraging the prosecution. On the contrary, this charge, expressly and unequivocally, made it clear that defendant's silence conveyed "his view that he is not guilty of the charges", rather than that his testimony might aid the prosecution.

Finally, it should be noted, the court's charge on this point told the jurors nothing that defense counsel had not already told them. Counsel's remarks in summation are rife with the suggestion that defendant's decision not to testify was based on privilege and not strategy. In light of counsel's extensive discussion of defendant's decision not to testify, defendant cannot complain that the court's remarks drew unwarranted attention to that fact. In sum, the court's no inference charge, to which defendant did not object, was not prejudicially expansive and accurately conveyed the guiding principle of law.

Nor was there, contrary to the majority's view, any error in that portion of the court's charge in which it stated that where the evidence yields two inferences of equal weight, "one that leads you to the conclusion that he's guilty and another that leads you to the conclusion that he's not guilty", the defendant is entitled to the inference that he's not guilty. Despite the fact that defendant never objected at trial, the majority finds error because the court, developing that theme further, stated, "However, if the track is not equal and you cannot say that they are equal inferences, that they lead you to similar conclusions, the defendant then is not necessarily entitled to the inference that he's not guilty and you draw your conclusions accordingly." These rather routine remarks as to what the jury should do when confronted with equal inferences were neither intended nor reasonably understood to address the People's burden of establishing guilt beyond a reasonable doubt. Rather, they concerned the jury's inference drawing faculty. Moreover, there is nothing improper about this instruction; it is not inconsistent with the court's oft-repeated instruction that the ultimate issue—defendant's guilt —had to be proved beyond a reasonable doubt. The majority fails to cite one case in which similar instructions have been criticized. Instead, it cites cases criticizing the " 'scales are even' " language which, although technically correct, could, it has been held, mislead the jury when used to define reasonable doubt. *(See, People v Fox,* 72 AD2d 146, 147-148; *People v Cohen,* 61 AD2d 929.)* The concern with such a charge is that the jury might believe that it could convict on something less than the reasonable doubt standard, such as by preponderance

of the evidence. *(See, People v Fox, supra.)* Here, the court's instructions on defendant's entitlement to every favorable inference did not alter the standard given to the jury in evaluating whether the evidence was sufficient to convict. Thus, there was no danger that the jury would apply a lesser standard in determining defendant's guilt. Read as a whole, as it must be, the charge correctly and thoroughly instructed the jury on the burden of proof. For that reason, it is hardly surprising that defendant did not object to this portion of the charge.

Finally, as has been noted, this particular court has been justifiably criticized in the past and its judgments, where warranted, reversed for its wordy charges and ill-chosen analogies. Whatever the inadequacies of the court's charges, past and current, the rules of preservation and prejudicial error, real not fancied, still apply to the review of its judgments.

The judgment should be affirmed.