■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD ALLAN, Appellant. [596 NYS2d 793] —Judgment, Supreme Court, New York County (Jerome Hornblass, J.), rendered January 8, 1991, convicting defendant, after a jury trial, of grand larceny in the fourth degree (Penal Law § 155.30 [5]), and sentencing him, as a predicate felony offender, to an

indeterminate term of imprisonment of from 2 to 4 years, is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

By Indictment No. 6172/90, filed June 6, 1990, defendant was charged with grand larceny in the fourth degree. The charges stemmed from a May 16, 1990 incident in which defendant was alleged to have diverted the attention of a taxi cab driver who had stopped for a red light, while his co-defendant, Charles Massey, snatched $70 from the driver's breast pocket. Following a jury trial, defendant was found guilty and sentenced as aforenoted.

On appeal, defendant asserts that the trial court erred in several of its instructions to the jury. We agree. Once again we must advise this Trial Judge, whose charges to the jury have resulted in several reversals, that he can "best avoid error by delivering the standard charge" *(People v Stinson,* 186 AD2d 23, 24-25) and that "a Judge should think long and hard about the wisdom of departing from the standard charge on such elementary matters as reasonable doubt, burden of proof and a defendant's decision not to take the stand" *(People v Nunez,* 182 AD2d 527, 528 [Sullivan, J., concurring], *lv denied* 80 NY2d 836).

First, it was error for the Judge to have charged the jury, in the absence of defendant's request, with respect to defendant's election not to testify. CPL 300.10 (2) provides that, "Upon request of a defendant who did not testify in his own behalf, *but not otherwise,* the court must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn". (Emphasis added.) Moreover, the charge given here impermissibly emphasized the defendant's decision not to take the stand, a practice that has repeatedly required reversal of this trial court *(see, e.g., People v Stinson, supra; People v Wright,* 174 AD2d 522; *People v Garcia,* 160 AD2d 354, *appeal dismissed* 76 NY2d 934). Finally, despite its expanded language, the charge never, in fact, instructed the jury that it could not draw any adverse inference from defendant's decision not to take the stand.*

Although, as respondent notes, defense counsel did not preserve this claim as a matter of law *(see,* CPL 470.05 [2]), we are compelled, in light of the cumulative effect of all the

---

* Instead, the Trial Judge told the jury "not to hold [it] against him", an instruction which would not necessarily preclude the drawing of an unfavorable inference.

errors in the case, to reach it in the interest of justice *(see, People v McCain,* 177 AD2d 513, 514).

We find further infirmity in the trial court's instructions on the presumption of innocence and reasonable doubt. In *People v Stinson (supra,* at 25), our reversal was necessitated in part because the charge on presumption of innocence made references to " 'equal inferences' " in a manner permitting the jury to conclude that, if the inferences were *not* equal, there was sufficient evidence to convict *(see also, People v Fox,* 72 AD2d 146, 147-148; *People v Smith,* 121 AD2d 411, 412). In nearly identical language to that utilized in *Stinson (supra),* the trial court conveyed that improper instruction to the jurors in the case at bar:

"Where there are two inferences that you can draw, they're equal inferences, two equal conclusions that you can draw, one that leads you to the conclusion that the defendant is guilty and another conclusion that leads you to the conclusion that the defendant is not guilty, under those circumstances of equal inferences, the defendant, because he's presumed innocent, is entitled to the inference to the conclusion that he's not guilty.

"However, if there are two unequal inferences that can be drawn and they're not equal, the defendant is not necessarily entitled to that conclusion in his favor, because they're not equal inferences that can be drawn."

This error was compounded when the court subsequently instructed the jury that the "words, 'guilty' or 'not guilty' should be equally as easy for you to recite".

In another egregious error, the court instructed the jury that "if you have a doubt" but "cannot express" either the doubt or a reason therefor, "then the prosecutor has proven her case". As recently held in *People v Antommarchi* (80 NY2d 247, 252), "[a]n instruction that requires jurors to supply concrete reasons 'based upon the evidence' for their inclination to acquit implicitly imposes on defendants the burden of presenting a defense that supplies the jurors with the arguments they need to legitimize their votes", and thus constitutes impermissible burden shifting.

Finally, the trial court's instruction that the jurors could take into account a witness's job, education, and status in the community in assessing credibility diluted its charge that the testimony of a police officer should be evaluated in the same way as that of any other witness. Again, an error of this nature has occasioned prior reversal of this Trial Judge *(see,*

*People v Rawlins,* 166 AD2d 64, 66). Concur—Carro, J. P., Rosenberger, Ellerin and Kassal, JJ.

Kupferman, J., dissents in a memorandum as follows: I would affirm the judgment, convicting defendant, after a jury trial, of grand larceny in the fourth degree and sentencing him as a predicate felony offender to an indeterminate term of from two to four years imprisonment.

While, in some respects, the trial court's jury charge was overly expansive and the more advisable practice would have been for the court to have given the charge as set forth in the Criminal Jury Instructions *(see, People v Stinson,* 186 AD2d 23; *People v Nunez,* 182 AD2d 527, *lv denied* 80 NY2d 836; *People v Jones,* 181 AD2d 463), reversal of defendant's conviction is unwarranted.

Although defense counsel did not specifically request that the court charge the jury with respect to defendant's failure to testify, the court, as it has in earlier cases, nevertheless charged the jury, in pertinent part, that, by not taking the stand, defendant essentially told them that the burden is on the prosecutor and "I have no responsibility nor duty to take the stand and to be a witness. By that I tell you I believe I'm not guilty and let the prosecutor prove her case against me. And indeed, your duty is not to hold that against him as he elected not to testify because that is his absolute right."

Defendant contends that the court erred by giving a charge where none was requested contrary to CPL 300.10 (2) and by giving a lengthy charge which unnecessarily drew attention to his silence in a "manner which belittled that constitutional choice." Both briefs extensively discuss the similarities and differences between the charge given here and previous charges by this particular court, which have been the subject of criticism as well as reversal. It appears, however, after reviewing these prior appeals, that, due to the lack of objection and the similarity to the charges which have been upheld and given counsel's summation reference to not testifying, the challenged instruction, while possibly unfortunate, does not require reversal.

Where substantially similar language has been used and no objection registered to the unrequested charge, reversible error has not been found *(People v Nunez, supra; People v Lattimore,* 174 AD2d 352, *lv denied* 79 NY2d 859; *People v Kelly,* 164 AD2d 767 [reversible error found on other grounds], *affd* 76 NY2d 1013; *People v Rivera,* 160 AD2d 419, *lv denied* 76 NY2d 1024). Notably, these cases involved language which

this Court condemned in *People v Garcia* (160 AD2d 354, 354-355, *appeal dismissed* 76 NY2d 934)—that defendant's decision is essentially telling the jury " 'I believe I'm not guilty' "—but this language alone, at least where there is no objection, does not warrant reversal.

Inasmuch as the charge here was not as lengthy as that given in some of the previously cited cases *(e.g., People v Lattimore, supra)*, the length of the charge here hardly requires reversal. Indeed, while many (but not all) of the prior decisions involving this particular court's charge were issued following the trial in this case, the trial court has apparently excised some language this Court has found objectionable (e.g., it did not mention that the decision not to testify is often made by counsel, which was found to be reversible error in *People v Jones, supra)*, although not heeding our admonition to either refrain from giving any charge where not requested, or at least to confine itself to the statutory language. This admonition was most recently reiterated in *People v Stinson (supra)*, which found that the court's instruction, while not inaccurate, was unacceptably lengthy and drew unnecessary attention to the defendant's failure to testify. Apropos of the present case, however, *Stinson* pointed out that, unlike *People v Nunez (supra)*, the issue had been properly preserved.

Likewise, the court's charge on equal inferences was similar to its charge on the subject in *People v Stinson (supra, at 25)*, where the majority found that the court erroneously used allusions to " 'equal inferences' " and " 'equal tracks' " that posed the same risk recognized in " 'scales are even' " language, namely, that where a jury is instructed that a defendant should be acquitted " 'if the scales are even' ", it may draw the negative implication that, if the scales are *not* even, there is enough evidence to convict (citing *People v Fox*, 72 AD2d 146, 147-148; *People v Smith*, 121 AD2d 411). However, as noted by Justice Sullivan in his dissent *(supra, at 28)* the language used had not been criticized before and the cited cases merely held that the " 'scales are even' " language, although technically correct, could mislead the jury when used to define reasonable doubt.

Here, unlike *Stinson (supra)*, where the issue was preserved by proper objection and where the Court found that the "equal inferences" language compounded the court's fatal enhancement of the plain and simple language of the statute on the subject of a criminal defendant's failure to take the witness stand, defendant failed to preserve the issue by proper objection and, absent other error in the charge warranting

reversal, the court's equal inference charge does not, by itself, constitute reversible error.

Regarding the court's charge on reasonable doubt which, defendant argues, purportedly imposed "an articulation requirement" essentially shifting the burden to defendant to supply a "concrete" reason for a verdict of not guilty, similar language has previously been found unobjectionable on numerous occasions *(People v Antommarchi,* 176 AD2d 104, *revd on other grounds* 80 NY2d 247; *People v Rivera,* 174 AD2d 530, *lv denied* 78 NY2d 1014), and this Court has previously noted that the permissive language used by the court here (a reasonable doubt is "one for which a reason *can* be given" [emphasis added], rather than "has to") is preferable *(People v Jackson,* 155 AD2d 329, *affd* 76 NY2d 908).

Likewise, there is no merit to defendant's points regarding the court's charge on the presumption of innocence, which properly conveyed the principle that such presumption remains until the jury is convinced otherwise beyond a reasonable doubt, and its statement that "[t]hose words 'guilty' and 'not guilty' should be equally easy for you to recite", which, when considered in the context given, was intended solely to remind the jury to remain objective throughout its deliberations, which conclusions are reinforced by the lack of objection to the charge at trial. Also, there is no merit to defendant's arguments regarding the proof of guilt and the weight of the evidence against him.

It should be emphasized that a Judge is not a "potted plant" nor an automaton to be wound up to spew forth a mechanical charge. While there are guidelines and boundaries, it is the essence of a fair trial that governs, and this defendant was properly served by a concerned Jurist.