## JACOBS v. STATE

[No. 349, September Term, 1964.]

*Decided June 8, 1965.*

The cause was argued before HAMMOND, HORNEY, MAR-
BURY, SYBERT and BARNES, JJ.

*Marvin B. Steinberg* for appellant.

*Robert F. Sweeney, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General, Charles E. Moylan,
Jr.* and *James W. McAllister, State's Attorney* and *Assistant
State's Attorney,* respectively, *for Baltimore City,* on the brief,
for appellee.

PER CURIAM.

Judge Harlan, in the Criminal Court of Baltimore, found
the appellant, Martin Jacobs, guilty of assault with intent to
murder the prosecuting witness, Donald E. Stahl.

On February 4, 1964, Jacobs became involved in an argu-
ment with Stahl at "Mary's Bar," at Pratt and Wolfe Streets

in Baltimore City over a shuffle board game. Both men had been drinking and Mary Krupa, the proprietress, to avoid any trouble at her place, asked Jacobs if he had a knife. Jacobs indicated that he had and the proprietress asked Jacobs to give it to her. He did this. The proprietress had been warned by a witness, Donald Canning, to "break it up" as "she was going to have some trouble." Canning testified that he had heard Jacobs call Stahl a foul name and state that if Stahl would " 'slip out the door I'll cut you' or 'I'll cut you fast' or words to that effect." This argument, however, was confined to verbal abuse. Stahl and others left "Mary's Bar" and, with others, went over to "Sophie's Bar" at Pratt and Durham Streets, near "Mary's Bar." Stahl played one or two games of shuffle board with Canning and ordered a beer and a bowl of soup. Fifteen to twenty minutes later Jacobs left "Mary's Bar", after first receiving back his knife from the proprietress of that bar, and entered "Sophie's Bar." Immediately thereafter the argument between Jacobs and Stahl began again and there was more verbal abuse of Stahl by Jacobs. Miss Sophie, the proprietress of Sophie's Bar told Jacobs she wanted no trouble and he would have to leave. He then left.

There is some variation in the testimony in regard to how soon Stahl left Sophie's Bar after Jacobs had gone out. Miss Sophie testified "He was eating, he was in the place at least fifteen minutes, maybe more, maybe longer." Jacobs indicated that it was almost immediately, but when questioned by the trial court that "it wasn't fifteen minutes as they say?", Jacobs replied "I don't know." Canning indicated that Stahl was eating his soup and "was pretty hot," and "shortly after that, I thought it was almost immediately, but it must have been some time involved, shortly after that he went outside." Jacobs was waiting on the outside, called Stahl a foul name, whereupon Stahl hit Jacobs twice and knocked him down. One of the blows fractured Jacob's nose. Jacobs then cut Stahl with his knife. The wounds required over 300 stitches to close. Stahl was approximately 50 pounds heavier and three inches taller than Jacobs. When Jacobs was asked on cross-examination why he didn't run, he replied "I guess I was mad, I guess." When asked "Then you intended to cut him, did you not? You

wanted to get even with him, didn't you"? Jacobs replied "Yes, sir, I guess so."

Judge Harlan concluded that the evidence established that Jacobs was lying in wait for Stahl outside of "Sophie's Bar" and in view of the prior threats and the whole situation, Jacobs had made the assault with intent to murder Stahl, and found him guilty.

We are of the opinion that there was sufficient evidence to support the verdict. In view of the prior threat to "cut him and cut him fast," and the fact that Jacobs was waiting for Stahl when he left "Sophie's Bar" after the passage of some substantial amount of time (the trial court resolved this issue of fact against Jacobs), Stahl was entitled to believe he was in apparent imminent or immediate danger of death or serious bodily harm from his potential assailant and was entitled to take such action as he deemed necessary to protect himself. *Guerriero v. State,* 213 Md. 545, 132 A. 2d 466 (1957). Stahl was justified under these circumstances in striking the first blow, as Jacobs was the aggressor in this situation.

We have said many times, that when the evidence is conflicting, its determination is for the trier of facts and where the case is tried before the trial court, without a jury, the trial court's "judgment will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." Maryland Rule 886a. See *Johnson v. State,* 237 Md. 283, 291, 206 A. 2d 138, 143 (1965) and cases therein cited. It is clear to us that upon this record we cannot find that the trial court's determination of the facts is clearly erroneous.

*Judgment affirmed.*