872 A.2d 25

**Jesse SPAIN, Jr.**

v.

**STATE of Maryland.**

**No. 81, Sept. Term, 2004.**

Court of Appeals of Maryland.

April 7, 2005.

Peter F. Rose, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for petitioner.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

## I.

On Sunday, 3 February 2002, Officer Cornelius Williams, assigned at the time to the Western District FLEX unit[1] of the Baltimore City Police Department, was walking eastbound in the 1900 block of West Baltimore Street, near its intersection with North Monroe Street, when he saw a group of seven men at the corner. As Officer Williams, who was dressed in plain clothes, walked toward the group, one group member, a man wearing a gray sweat suit with a red stripe and later identified as Jesse Spain, Jr. (referred to as "Spain" or Petitioner subsequently), approached the officer and asked, "What do you want?" Interpreting this remark as an inquiry about the possible sale of illegal narcotics, Officer Williams, trained and experienced in matters involving street level narcotics distribution, responded, "What do you have?" Spain responded, "I've got some pills." Officer Williams interpreted this statement to indicate that Spain was offering for sale heroin in gel cap form.

Spain then tapped the shoulder of another man in the group (later identified as Petitioner's father, Jesse Spain, Sr.), who

---

1. The FLEX unit is a plain clothes squad within the Baltimore City Police Department that responds to varying locations during different time periods depending on crime trends.

advised Spain, "I'm going to take [Officer Williams] up the street." As Officer Williams and Spain, Sr. walked north-bound on Monroe Street towards the 1900 block of West Fairmount Avenue, Spain, Sr. stated that he had "a kid on a bike, who's got some pills on him." After walking approximately 90 feet further, Spain, Sr. "whistled out." A young man on a bicycle approached them. Officer Williams recognized the young man on the bicycle as Juan Wilson, whom Officer Williams previously had arrested for street level narcotics distribution. Wilson stopped his bicycle in front of Officer Williams and removed from his pocket a clear plastic bag that contained several gel caps filled with what was later stipulated to be heroin powder. Wilson, at this point, recognized Officer Williams and began to ride slowly away.

Officer Williams identified himself as a police officer and arrested Wilson. Meanwhile, Spain, Sr. fled through an alley on West Fairmount Avenue. When a patrol car and wagon responded to the scene of the narcotics transaction, the original group of men on the corner of West Baltimore Street and North Monroe Street dispersed. As Officer Williams was arresting Wilson, he observed Spain walk westbound on West Baltimore Street out of his sight. A few minutes later, as he was riding in a police wagon, Officer Williams arrested Spain, whom he found standing on the front steps of a residence on West Baltimore Street.

By criminal information filed in the Circuit Court for Baltimore City, Spain was charged with various violations relating to his role in the drug transaction on 3 February involving Officer Williams.[2] At Spain's jury trial, the State's sole wit-

---

2. Spain was charged with one count of distribution of a controlled dangerous substance ("CDS") in violation of Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 286 (now codified, without substantive change, at Md.Code (2002), § 5–602 of the Criminal Law Article), one count of using a minor for distribution of a CDS in violation of Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 286C (now codified, without substantive change, at Md.Code (2002), § 5–628 of the Criminal Law Article), one count of possession of a CDS with intent to distribute in violation of Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 286 (now codified, without substantive change, at Md.Code (2002), § 5–602 of the Criminal Law

ness was Officer Williams,[3] who testified as both a fact witness and an expert on the packaging, identification, and distribution of street level narcotics in Baltimore City. The defense consisted of only one witness, Spain's sister, Dawn Spain, who testified that she spoke with Spain earlier on 3 February and he told her that he planned to attend a Super Bowl party later that evening at his grandfather's house, which happened to be near the scene of the narcotics transaction. Spain's defense at trial appeared to hinge on the contentions that Officer Williams was mistaken as to the encounter between himself and Officer Williams and that he was in no way involved in the narcotics transaction that followed.[4]

Article), one count of possession of a CDS in violation of Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 287 (now codified, without substantive change, at Md.Code (2002), § 5–601 of the Criminal Law Article), and three counts of conspiracy relating to the distribution of a CDS in violation of Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 290. Spain was charged with using a minor for distribution of a CDS because Wilson's birthday was 1 June 1985, making him under the age of 18 at the time of the narcotics transaction. At the close of the State's case, Spain moved for judgment of acquittal on Count I relating to the charge of distribution of a CDS, which the trial court granted.

3. The defendant stipulated that the substance in the gel caps was heroin, excusing the need for the State to call a witness to testify as to the identity of suspected CDS. Spain also did not object to the admission of the State's documentary exhibits offered through Officer Williams.

4. The Dissent would have us believe that the thrust of Spain's defense at trial focused on urging the jury to disbelieve Officer Williams because he lied about Spain's involvement ("Thus, notwithstanding the majority's 'mistake' characterization, the credibility of Officer Williams was placed at issue by the petitioner. Indeed, the petitioner's objection to the State's closing argument referenced Officer Williams' 'perjuring himself' and his 'credibility'." Dissent at 1). To believe so would be wrong.

 Although the defense at trial surely wanted the jury to believe its sole defense witness (Spain's sister) and its theory that Spain, while in transit to a Super Bowl party at his grandfather's home, was caught up in a drug transaction conducted by others, it's rationale offered in closing argument for reaching that view was that Officer Williams' memory was unreliable due to passage of time and mental commingling of similar events, to wit:

 And let's remember again, this case happened over a year ago. The officer that is testifying-officers, like any other people who testify can

Against this backdrop, the State's Attorney advocated during closing argument as follows:

[STATE'S ATTORNEY]: The second point I wanted to make to you is that the Officer in this case—the Defense's argument is that Mr. Spain was outside his house. He was going to attend a Superbowl party and was buying beer. Part of what you have to determine is the credibility of the witnesses. The defense put on a witness who testified, and the State put on one witness, the Officer in this case. You have to weigh the credibility of each individual. Who has a motive to tell you the truth. The Officer in this case would have to engage in a lot of lying, in a lot of deception and a conspiracy of his own to come in here and tell you that what happened was not true. He would have to risk everything he has worked for. He would have to perjure himself on the stand.

[DEFENSE COUNSEL]: Objection.

THE COURT: Basis?

[DEFENSE COUNSEL]: Reference to the Officer perjuring himself your Honor. It's as far as credibility.

THE COURT: Okay, well the jury understand[s] that this of course is closing argument, and that they will [consider the statements to be] lawyers' arguments. Overruled.

[STATE'S ATTORNEY]: So basically you have to determine who has the credibility. Who's telling you the truth. Is the Officer coming here and making up a story? What's

---

make mistakes. Does he remember exactly what was said to him a year ago? I would submit to you ladies and gentlemen, that probably since that incident, Officer Williams has probably had hundreds of arrests. He's an expert in drugs activity. He's working on the street. Does he remember, verbatim exactly what my client said to him that day? It is enough that he [Spain] may have directed the officer to where drugs were being sold, to find if he was working with these people in an agreement. It is not.
Trial transcript, 6 March 2003, Page 35, lines 9–20.
Consistently, Spain's appellate counsel argued before us that Officer Williams' "veracity" was not challenged, rather the "accuracy" of his memory was at issue. We were informed that the "defense from the minute of opening all the way through the end was he may have made a mistake."

his incentive to lie and frame Mr. Spain? The reality is that this Officer—they attempted to sell this Officer drugs on the street. They didn't know he was a police officer. He was out there trying to enforce the law. But, you have to understand that Officer Williams has no motive to lie, because he has everything to risk in this case. Because he doesn't have to go out and make up drug arrests. Because he has plenty of legitimate drug arrests. There's absolutely no incentive for him to come in here and tell a story about Mr. Spain. So is Mr. Spain the victim of circumstance? He was just taken up in front of his house, trying to attend a Superbowl party? That's the defense's theory in the case. You will ultimately have to decide who you want to believe.

On 6 March 2003, the jury returned a guilty verdict on all counts.[5] Spain timely appealed to the Court of Special Appeals, which affirmed his conviction in an unreported opinion. He then petitioned this Court for a writ of certiorari, which we granted, 383 Md. 256, 858 A.2d 1017 (2004), in order to consider the following question:

> Did the trial court properly exercise discretion in regulating the scope of closing argument when it allowed the State's Attorney to argue that the police officer in this case had no motive to lie and would risk his career by testifying falsely?

## II.

In *Degren v. State,* 352 Md. 400, 722 A.2d 887 (1999), we outlined the "great leeway" attorneys are afforded in presenting closing arguments to the jury:

> The prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom. In this regard, [g]enerally, . . . the prosecuting attorney is as free to com-

---

**5.** The trial judge sentenced Spain to 10 years imprisonment for the conviction of using a minor to distribute, and 10 years imprisonment, to run concurrently, for the conviction of possession with intent to distribute. The trial judge merged all of the other convictions for sentencing purposes.

ment legitimately and to speak fully, although harshly, on the accused's action and conduct if the evidence supports his comments, as is accused's counsel to comment on the nature of the evidence and the character of witnesses which the [prosecution] produces.

\* \* \*

While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments of opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined—no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions.

*Id.* at 429–30, 722 A.2d at 901–902 (citations omitted).

█ Despite this lack of "hard-and-fast limitations" on closing arguments, one technique in closing argument that consistently has garnered our disapproval, as infringing on a defendant's right to a fair trial, is when a prosecutor "vouches" for (or against) the credibility of a witness. *See, e.g., Walker v. State,* 373 Md. 360, 403–04, 818 A.2d 1078, 1103–04 (2003) (finding improper vouching to have occurred where a prosecutor made assertions, based on personal knowledge, that a witness was lying). Vouching typically occurs when a prosecutor "place[s] the prestige of the government behind a witness through personal assurances of the witness's veracity . . . or suggest[s] that information not presented to the jury supports the witness's testimony." *U.S. v. Daas,* 198 F.3d 1167, 1178 (9th Cir.1999) (citations omitted). The Supreme Court recognizes that prosecutorial vouching presents two primary dangers:

[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor,

supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*U.S. v. Young,* 470 U.S. 1, 18–19, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1 (1985).

In the present case, Spain argues that the prosecutor, during his closing argument, improperly vouched for the credibility of the State's sole witness, Officer Williams, by implying that the officer 1) did not have a motive to testify falsely, and 2) in fact had a motive to testify truthfully because to testify falsely would expose him to the penalties of perjury and lead to adverse consequences to his career as a police officer. Although we agree that the latter of the prosecutor's comments transcended the boundaries of proper argument, we conclude ultimately that those statements did not mislead or influence the jury unduly to the prejudice of Spain, and therefore constituted harmless error. *Degren,* 352 Md. at 430–31, 722 A.2d at 902 (citations omitted).

### A.

No one likely would quarrel with the notion that assessing the credibility of witnesses during a criminal trial is often a transcendent factor in the factfinder's decision whether to convict or acquit a defendant. During opening and closing arguments, therefore, it is common and permissible generally for the prosecutor and defense counsel to comment on, or attack, the credibility of the witnesses presented.

Part of the analysis of credibility involves determining whether a witness has a motive or incentive not to tell the truth. *Cf. Pantazes v. State,* 376 Md. 661, 680, 831 A.2d 432, 443 (2003) (describing as important the right to cross-examination because it allows a defendant to demonstrate to the factfinder a witness's bias, interest, or motive to testify falsely); *see also* Maryland Criminal Pattern Jury Instructions

§ 3:10 (MICPEL 2003).[6] Attorneys therefore feel compelled frequently to comment on the motives, or absence thereof, that a witness may have for testifying in a particular way, so long as those conclusions may be inferred from the evidence introduced and admitted at trial. *See, e.g., U.S. v. Walker,* 155 F.3d 180, 187 (3rd Cir.1998) (finding that "where a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury that the credibility of the witness based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching").

■ The prosecutor's comments about Officer Williams's absence of a motive to lie did not implicate any information that was outside the evidence presented at trial. When a prosecutor argues that a particular police officer lacks a motive to testify falsely, such comments do not bear directly on a defendant's guilt or innocence, but are merely an allusion to a lack of evidence presented by the defendant that the officer in this case possessed any motive to lie or devise a story implicating the defendant in criminal conduct. *See Walker,* 155 F.3d at 187 (finding that "prosecutorial comment

---

**6.** Before sending the jury to deliberate, the trial judge in Spain's trial gave, among others, the following jury instruction, which, for the most part, mirrors Maryland Criminal Pattern Jury Instructions § 3:10:

You are the sole judges of whether a witness should be believed. In making this decision, you may apply your own common sense and everyday experiences. In determining whether a witness should be believed, you should carefully judge all the testimony and evidence and the circumstances under which the witness testified. You should consider such things as: the witness' behavior on the stand and manner of testifying; did the witness appear to be telling the truth; the witness' opportunity to see or hear the things about which testimony was given; the accuracy of the witness' memory; does the witness have a motive not to tell the truth; does the witness have an interest in the outcome of the case; was the witness' testimony consistent; was the witness' testimony supported or contradicted by evidence that you believe and whether and the extent to which the witness' testimony in the Court was different from any statement the witness made on any previous occasion.

You need not believe any witness, even if the testimony is uncontradicted. You may believe all, part or none of the testimony of any witness.

that points to a lack of evidence in the record which supports a defendant's argument that the witness is not credible is proper so long as the comment does not constitute an assurance by the prosecutor that the witness is credible"). The prosecutor's invitation for the jury to consider whether the officer had a motive to lie did not amount to improper vouching because the comments did not express any personal belief or assurance on the part of the prosecutor as to the credibility of the officer. *See, e.g., Reyes v. State,* 700 So.2d 458, 460–61 (Fla.Dist.Ct.App.1997) (finding that statements such as, "Did it appear as though [the police officer] was trying to lie?" did not "constitute an expression of the prosecutor's personal opinion as to the credibility of the witness"). Nor did such comments, in isolation, explicitly invoke the prestige or office of the State or the particular police department or unit involved. *Id.*

### B.

The prosecutor continued during closing argument that Officer Williams did not testify falsely because, if he were to do so, he would suffer adverse consequences to his career as a police officer. These comments were improper.

Courts consistently have deemed improper comments made during closing argument that invite the jury to draw inferences from information that was not admitted at trial. *See Hill v. State,* 355 Md. 206, 222, 734 A.2d 199, 208 (1999); *Degren,* 352 Md. at 433, 722 A.2d at 903. Although the notion of adverse personnel implications flowing from perjured testimony by a police officer resonates at a common sense level, at no time during the trial scrutinized in the present case did the State introduce evidence from which it could be inferred ineluctably that Officer Williams risked his career or any of its benefits if he were to testify falsely. *See, e.g., U.S. v. Gallardo–Trapero,* 185 F.3d 307, 320 (5th Cir.1999) (finding that a prosecutor's argument that agents of the federal government would not risk their careers by testifying falsely was improper because it referred to evidence not in the record); *U.S. v. Martinez,* 981 F.2d 867, 871 (6th Cir.1992) (same); *U.S. v.*

*Pungitore,* 910 F.2d 1084, 1125 (3rd Cir.1990) (finding improper vouching and bolstering where there was "no evidence backing the prosecutor's comments that the U.S. Attorneys and law enforcement officers could not have behaved as unscrupulously as defense counsel alleged without violating their oaths of office and jeopardizing their careers").

 Even if evidence had been admitted from which it could be inferred that a police officer would face serious employment consequences as a result of testifying falsely, we nonetheless would conclude that the prosecutor's comments during closing argument constituted improper vouching because they also implied improperly that the witness's status as a police officer entitled him to greater credibility in the jury's eyes than any other category of witness about which the same might have been argued.[7] Although the State is free to highlight the incentive, or lack of incentive, of a witness to testify truthfully, courts consistently have held that it is improper to argue that a police officer may be deemed more credible simply because he or she is a police officer. *See, e.g., Fultz v. Whittaker,* 187 F.Supp.2d. 695, 706 n. 5 (W.D.Ky. 2001); *Reyes,* 700 So.2d at 461; *see also People v. Clark,* 186 Ill.App.3d 109, 134 Ill.Dec. 138, 542 N.E.2d 138, 142–43 (1989) (stating that "[i]t is established that a prosecutor may not argue that a witness is more credible because of his status as a police officer"). By invoking unspecified, but assumed,

---

7. We reserve for another day whether comments such as those made in this case would be allowed under the "invited response doctrine" as a response to a direct and specific attack on a police officer witness's veracity. The "invited response doctrine" suggests that "where a prosecutorial argument has been made in reasonable response to improper attacks by defense counsel, the unfair prejudice flowing from the two arguments may balance each other out, thus obviating the need for a new trial." *Walker,* 155 F.3d at 186 n. 5 (citations omitted); *see also Degren,* 352 Md. at 431–32, 722 A.2d at 902 (finding comments by the prosecution during closing argument, though "unprofessional and injudicious," to be nonetheless acceptable when "made in response to the defense counsel's comments during closing argument that the jury should not believe the State's witnesses because they had various motives to lie"). In this case, the defendant made no such specific and direct attack on Officer Williams's veracity.

punitive consequences or sanctions that might result if a police officer testifies falsely, a prosecutor's arguments imply that a police officer has a greater reason to testify truthfully than any other witness with a different type of job. Although the factfinder generally is made aware that a witness who is a police officer is testifying as to events witnessed while on duty as a police officer, a prosecutor must be careful not to insinuate that the credibility of statements made in this capacity may be assessed at a level of scrutiny other than that given to all witnesses. *U.S. v. Boyd,* 54 F.3d 868, 872 (D.C.Cir.1995); *see also People v. Allan,* 192 A.D.2d 433, 596 N.Y.S.2d 793, 795 (N.Y.App.Div.1993) (holding that a "trial court's instruction that the jurors could take into account a witness's job, education, and status in the community in assessing credibility diluted its charge that the testimony of a police officer should be evaluated in the same way as that of any other witness").

## C.

■ Although we find that the prosecutor's latter comments in this case improperly implied that a police officer be viewed by the factfinder as being more credible as a result of his or her status as a police officer, our inquiry does not end there. When statements made during closing argument stray beyond the outer realm of the latitude afforded prosecutors, we must inquire into the extent of any prejudice suffered by the defendant. As this Court in *Degren* stated,

Not every improper remark [made by a prosecutor during closing argument], however, necessarily mandates reversal, and "[w]hat exceeds the limits of permissible comment depends on the facts in each case." We have said that "[r]eversal is only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused." This determination of whether the prosecutor's comments were prejudicial or simply rhetorical flourish lies within the sound discretion of the trial court. On review, an appellate court should not reverse the trial

court unless that court clearly abused the exercise of its discretion and prejudiced the accused.

352 Md. at 430–31, 722 A.2d at 902 (citations omitted).

■ When assessing whether reversible error occurs when improper statements are made during closing argument, a reviewing court may consider several factors, including the severity of the remarks, the measures taken to cure any potential prejudice, and the weight of the evidence against the accused. *U.S. v. Melendez,* 57 F.3d 238, 241 (2nd Cir.1995); *see also Henry v. State,* 324 Md. 204, 232, 596 A.2d 1024, 1038 (1991) (finding that "[i]n determining whether reversible error occurred, an appellate court must take into account '(1) the closeness of the case, 2) the centrality of the issue affected by the error, and 3) the steps taken to mitigate the effects of the error' " (citations omitted)).

In this case, the prosecutor's reference to potential consequences to Officer Williams's career was an isolated event that did not pervade the entire trial. *See Wilhelm v. State,* 272 Md. 404, 425–26, 326 A.2d 707, 721 (1974) (rejecting the notion that one improper comment by the prosecutor during closing argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process" (citations omitted)); *Mazile v. State,* 798 So.2d 833, 834–35 (Fla.Dist.Ct.App. 2001). We note also the likely diminution of prejudice from the prosecutor's comments as a result of the trial judge's contemporaneous reminder that they were only an attorney's argument, not evidence, as well as the pertinent instructions that the trial judge gave to the jury before sending it to deliberate. In response to the objection by defense counsel, the trial judge stated, "Okay, well the jury understand[s] that this of course is closing argument, and that they will [consider the statements to be] lawyers' arguments. Overruled." Although the trial judge did not acknowledge the comments as improper, nor did he explicitly instruct the jury to disregard the comments, he reminded the jury that the prosecutor's statements only should be considered as argument, not evidence. By emphasizing the argumentative nature of closing

arguments contemporaneously with the improper comments, the judge took some effort to eliminate the jury's potential confusion about what it just heard and therefore ameliorated any prejudice to the accused.

More importantly, however, before jury deliberations began, the trial judge gave, among others, a jury instruction, based on Maryland Criminal Pattern Jury Instructions § 3:10, that emphasized the argumentative nature of closing arguments, and explicitly instructed the jurors as to relevant factors to consider and their roles as the sole judges of the credibility of the witnesses presented at trial. Maryland courts long have subscribed to the presumption that juries are able to follow the instructions given to them by the trial judge, particularly where the record reveals no overt act on the jury's part to the contrary. *Wilson v. State*, 261 Md. 551, 570, 276 A.2d 214, 223–24 (1971); *Brooks v. State*, 85 Md.App. 355, 360–61, 584 A.2d 82, 85 (1991). The jury in this case was instructed that it could reject or accept any testimony, and was to subject the credibility of all witnesses to an equivalent level of scrutiny. With these instructions in mind, we are confident that a reasonable jury would be able to fulfill properly its role and discern argument from evidence without undue prejudice to the defendant. *Wilhelm*, 272 Md. at 425–26, 445, 326 A.2d at 721–22, 732; *see also Young v. State*, 68 Md.App. 121, 136–37, 510 A.2d 599, 607 (1986) (finding that jury instructions such as those in this case were sufficient to apprise the jury of its duty to weigh testimony of police officers under the same scrutiny as other witnesses). We could find in the record no indicia, nor did Petitioner identify any, of the jury's inability or refusal to follow these explicit instructions given by the trial court. *See Brooks*, 85 Md.App. at 360–61, 584 A.2d at 85 (finding that when a defendant fails to demonstrate any evidence of the jury's inability or refusal to heed court's instruction, mere speculation that the "jury could not possibly have discharged [its] task appropriately . . . is totally insufficient").

Many courts finding improper similar comments during closing arguments also have found jury instructions, such as the one in this case, to be ameliorative of any prejudice that

resulted from the improper comments. *Degren,* 352 Md. at 434–35, 722 A.2d at 903–04; *Henry,* 324 Md. at 232, 596 A.2d at 1038; *Boyd,* 54 F.3d at 872; *Martinez,* 981 F.2d at 871.

Courts considering the prejudicial impact of improper prosecutorial comments also have examined the weight of evidence of the accused's guilt. *See Wilhelm,* 272 Md. at 427, 326 A.2d at 722 (finding that "[a]nother important and significant factor where prejudicial remarks might have been made is whether or not the judgment of conviction was 'substantially swayed by the error,' or where the evidence of the defendant's guilt was 'overwhelming' "). We find this factor, however, to be of somewhat less weight in this case. Although the record contains adequate evidence of Spain's guilt to support the convictions under a sufficiency analysis, we cannot say that the evidence of Spain's guilt is truly overwhelming. Nonetheless, we find that the relative lack of severity of the improper remarks, the lack of potential impact of the erroneous argument (greater veracity of police officer due to adverse employment consequences if he lied) on the defense's theory that Officer Williams' had a faulty memory (not that he lied), and the instruction given by the judge lead us to the conclusion that Spain did not suffer undue prejudice, as a result of the prosecutor's improper comments during closing argument, sufficient to warrant reversal of his convictions. We are convinced beyond a reasonable doubt that the error in no way influenced the verdict. *Ragland v. State,* 385 Md. 706, 870 A.2d 609 (2005); *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.

Dissenting Opinion by BELL, C.J.

Jesse Spain, Jr., the petitioner, was convicted, after a jury trial in the Circuit Court for Baltimore City, of various offenses involving a controlled dangerous substance, including the offense of using a minor for the purpose of distributing it. The sole witness for the State at the trial, and through whom

all of the State's exhibits were introduced, was Officer Cornelius Williams, who, at the time of the commission of the alleged offenses was working a plain-clothes assignment. Although the petitioner did not testify, his defense, confirmed by his only witness, his sister, was that he did not commit the offenses alleged and, in fact, was not present when they were committed. The majority acknowledges that this was the focus of the petitioner's defense:

> "Spain's defense at trial appeared to hinge on the contentions that Officer Williams was mistaken as to the encounter between himself and Officer Williams and that he was in no way involved in the narcotics transaction that followed."

386 Md. 145, 150, 872 A.2d 25, 28 (2005). Thus, notwithstanding the majority's "mistake" characterization, the credibility of Officer Williams was placed at issue by the petitioner.[8] Indeed, the petitioner's objection to the State's closing argument referenced Officer Williams' "perjuring himself" and his "credibility."

The State certainly understood that to be the case, even before the objection. There is no other logical reason or basis for the Assistant State's Attorney's closing argument to have included the following:

> "The second point I wanted to make to you is that the Officer in this case—the Defense's argument is that Mr.

---

**8.** Credibility is implicated however and in whatever manner it is argued that a witness's testimony ought not be credited; it may be a matter of academic interest or affect only the reprehensibility of the action, but to the factfinder, it matters not whether the basis of the unreliability of the witness's testimony is mistake or intentional fabrication. Either way, as indicated, the testimony is unreliable, lacks credibility. Moreover, in this case, it does not matter how the petitioner characterized Officer Williams' testimony, or why, whether diplomatic, perhaps tactical, given the position of the State's only witness. The State was clear in its closing argument that it perceived the issue to be a credibility issue—it told the jury, "You have to weigh the credibility of each individual," it had to "determine who has the credibility. Who's telling you the truth." It was the State's intention, and it had the desired effect, I submit, to enhance the Officer's credibility and to do so by emphasizing his position and, thus, vouching for the Officer. How effective it was, the impact it had on the jury, is a matter to be determined by the jury, not by this Court.

Spain was outside his house. He was going to attend a Superbowl party and was buying beer. Part of what you have to determine is the credibility of the witnesses. The defense put on a witness who testified, and the State put on one witness, the Officer in this case. You have to weigh the credibility of each individual. Who has a motive to tell you the truth. The Officer in this case would have to engage in a lot of lying, in a lot of deception and a conspiracy of his own to come in here and tell you that what happened was not true. He would have to risk everything he has worked for. He would have to perjure himself on the stand.

*　　*　　*　　*　　*　　*

"So basically you have to determine who has the credibility. Who's telling you the truth. Is the Officer coming here and making up a story? What's his incentive to lie and frame Mr. Spain? The reality is that this Officer—they attempted to sell this Officer drugs on the street. They didn't know he was a police officer. He was out there trying to enforce the law. But, you have to understand that Officer Williams has no motive to lie, because he has everything to risk in this case. Because he doesn't have to go out and make up drug arrests. Because he has plenty of legitimate drug arrests. There's absolutely no incentive for him to come in here and tell a story about Mr. Spain. So is Mr. Spain the victim of circumstance? He was just taken up in front of his house, trying to attend a Superbowl party? That's the defense's theory in the case. You will ultimately have to decide who you want to believe."

*Id.* at 151–52, 872 A.2d at 28–29. As indicated, the petitioner objected. The trial court overruled the objection, observing parenthetically, "Okay, well the jury understand[s] that this of course is closing argument, and that they will [consider the statements to be] lawyers' arguments."

The majority agrees with the petitioner that the State's argument that Officer Williams "had a motive to testify truthfully because to testify falsely would expose him to the penalties of perjury and lead to adverse consequences to his career

as a police officer,"[9] 386 Md. at 153, 872 A.2d at 29–30, was improper, because it " 'vouches,' " *i.e.*, " 'place[s] the prestige of the government behind a witness through personal assurances of the witness's veracity . . . or suggest[s] that information not presented to the jury supports the witness's testimony.' " *Id.* at 153–54, 872 A.2d at 30, quoting *U.S. v. Daas*, 198 F.3d 1167, 1178 (9th Cir.1999). Therefore, it holds that the trial court erred in overruling the petitioner's objection and, thus, allowing the prosecutor improperly to vouch for Officer Williams' credibility. *Id.* at 156–58, 872 A.2d at 31–32. Nevertheless, concluding that the prosecutor's statements concerning the officer's motive to testify truthfully "did not mislead or influence the jury unduly to the prejudice of [the petitioner]," the majority also holds that the error was harmless. *Id.* at 153–54, 872 A.2d at 30, citing *Degren v. State*, 352 Md. 400, 430–31, 722 A.2d 887, 902 (1999).

---

**9.** The petitioner argued that the State vouched for the credibility of its only witness, Officer Williams, in two ways: one, by arguing that Officer Williams had no motive to testify falsely, and two, that he, on the contrary, had a motive to testify truthfully by virtue of what he stood to lose, *i.e.*, "he would have to risk everything he has worked for. He would have to perjure himself on the stand." The majority rejects the former, observing that "[t]he prosecutor's comments about Officer Williams's absence of a motive to lie did not implicate any information that was outside the evidence presented at trial," 386 Md. at 155–56, 872 A.2d at 31, and, therefore, were not error. As we have seen, it concluded otherwise with respect to the comments referencing the officer's motive to testify truthfully.

I am not at all convinced that the majority is correct as to the absence of a motive to lie comments. The support that *Reyes v. State*, 700 So.2d 458, 460–61 (Fla.Dist.Ct.App.1997) and *U.S. v. Walker*, 155 F.3d 180, 187 (3rd Cir.1998) provide in that regard is tenuous, at best. *Reyes*, in fact, condemned the very conduct engaged in in this case and *Walker*'s analysis was largely semantic, essentially turning on the meaning of the phrase, "I submit to you." The real question is, whether the two kinds of comments may be parsed, as the majority has done, so that those that do not offend, when considered in context and with the instructions, so overshadow the offending ones that it can be said, beyond a reasonable doubt, that the offending comments had no effect on the verdict. It is simply inconceivable that any objective reviewer could. That is especially the case where the reviewer's function is not to weigh the evidence.

I agree that the State improperly vouched for Officer Williams' credibility and that the trial court erred in permitting the State to do so. I do not agree that the court's error was harmless. Accordingly, I dissent.

To be sure, as this Court observed in *Degren, supra,* 352 Md. at 432, 722 A.2d at 903 (quoting *Dorsey v. State,* 276 Md. 638, 653, 350 A.2d 665, 674 (1976)), "the determinative factor [when the issue is whether an error is prejudicial or harmless] ... has been whether or not the erroneous ruling, in relation to the totality of the evidence, played a significant role in influencing the rendition of the verdict, to the prejudice of the [defendant]." With regard to prosecutorial closing arguments, in particular, we have said:

"[T]he mere fact that a remark made by the prosecutor to the jury was improper does not necessarily require a conviction to be set aside. Reversal is only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused."

*Evans v. State,* 333 Md. 660, 679, 637 A.2d 117, 126 (1994), quoting *Jones v. State,* 310 Md. 569, 580, 530 A.2d 743, 748 (1987), *vacated and remanded on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916, *sentence vacated on remand on other grounds,* 314 Md. 111, 549 A.2d 17 (1988). The test for assessing that "determinative factor," where closing argument is at issue, for determining whether a remark requires reversal, is also well settled. As enunciated in *Dorsey, supra,* 276 Md. at 659, 350 A.2d at 678, it is:

"when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated."

Lest there be any doubt about it, we made clear in *Johnson v. State,* 325 Md. 511, 521, 601 A.2d 1093, 1097–98 (1992) that harmless error analysis, as applied in *Dorsey,* applied equally

to "arguments of counsel to the jury as part of the usual and ordinary procedures of a criminal trial," and, indeed, that *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974), the leading case addressing the limits of argument by counsel to the jury, and *Dorsey* "are consistent in the philosophy prompting them, comparable in the rationale underlying them, and similar in the test set out in them. Both are concerned primarily with error and the prejudice arising therefrom." *See Brown v. State,* 339 Md. 385, 397, 663 A.2d 583, 589 (1995). In fact, concluding that *"Dorsey* aimed at providing one standard to measure an error," [10] we have specifically rejected the State's argument urging a contrary position, "that the *Dorsey* test 'is meant to apply to those errors affecting an accused's constitutional rights and those other evidentiary, or procedural, errors which may have been committed during a trial' " and not arguments of counsel, which "are not evidence and have no binding force or effect." *Johnson, supra,* 325 Md. at 521, 601 A.2d at 1097–98. There simply is no incompatibility, then, between reviewing a trial court's ruling as to the propriety of remarks made during closing arguments for abuse of discretion and applying the *Dorsey* test when an abuse has been found. As *Wilhelm* makes clear, there is no error "unless there has been an *abuse of discretion* by the trial judge of a character likely to have injured the complaining party." 272 Md. at 413, 326 A.2d at 714–15.

Moreover, the credibility of witnesses is a matter to be resolved by the trier of fact, in a jury trial, the jury. *Robinson v. State,* 354 Md. 287, 313–314, 730 A.2d 181, 195 (1999). Thus, in a jury trial, only the jury determines whether to believe any witnesses, and which witnesses to believe. *See Bohnert v. State,* 312 Md. 266, 278–79, 539 A.2d 657, 663 (1988); *Gore v. State,* 309 Md. 203, 210, 214, 522 A.2d 1338, 1341, 1343 (1987); *Battle v. State,* 287 Md. 675, 685, 414 A.2d 1266, 1271 (1980); *Wilson v. State,* 261 Md. 551, 566, 276 A.2d

---

**10.** In *Dorsey v. State,* 276 Md. 638, 658, 350 A.2d 665, 677 (1976), we said: "Regardless of the generic nature of the error, we believe that upon appellate review, a uniform test should be applied in all criminal cases to determine the effect the error may have had on the verdict."

214, 221 (1971); *Jacobs v. State,* 238 Md. 648, 650, 210 A.2d 722, 723–24 (1965). *See* also *Dykes v. State,* 319 Md. 206, 224, 571 A.2d 1251, 1260 (1990) (requiring the court to "instruct the jury that it is the sole judge of the facts, the weight of the evidence, and the credibility of the witnesses"); Maryland Rule 4–325(d).[11]

The majority does not appear to have applied the *Dorsey* test; although it cites Dorsey and its requirement that the appellate court be satisfied beyond a reasonable doubt that the error played no role in the verdict, it does so only at the end of the opinion. 386 Md. at 161, 872 A.2d at 34–35. Rather it appears to have reverted to the *Wilhelm* standard, guided, however, by the analysis in *Degren.* The latter case cited *Dorsey,* but not for the "harmless error" test. The Court referenced the *Dorsey* language identifying the "determinative factor" to be considered in deciding whether any error is harmless or prejudicial, 352 Md. at 432, 722 A.2d at 902, and not the *Dorsey* Court's pronouncement of the level of certainty required to declare an error, once found, to be harmless. The Court's focus, in short, as is the majority's in this case, was on the *Wilhelm* formulation of what is required to be shown to render arguments of counsel improper and, therefore, a basis for reversal. *See Degren,* 352 Md. at 432–33, 722 A.2d at 902–03. In that regard, it emphasized the instructions given the jury that were ameliorative of any error or mistatement, whether recognized by the trial court as such, or not. *Id.* at 433–34, 722 A.2d at 903–04.

The test for prejudice that the *Wilhelm* Court identified as applicable was "whether we can say, 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" 272 Md. at 416, 326 A.2d at 716, quoting *Gaither v. United States,* 413 F.2d 1061, 1079

---

11. Maryland Rule 4–325(d) permits the trial court, in instructing the jury, to "refer to or summarize the evidence in order to present clearly the issues to be decided," but "[i]n that event, the court shall instruct the jury that it is the sole judge of the facts, the weight of the evidence, and the credibility of the witnesses."

(D.C.Cir.1969) Citing *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–67 (1946). It identified, as well, factors it determined to be decisive on the issue: the closeness of the case, *id.,* citing *Cross v. United States,* 353 F.2d 454, 456 (D.C.Cir.1965); *Jones v. United States,* 338 F.2d 553, 554 n. 3 (D.C.Cir.1964); the centrality of the issue affected by the error, *id.* citing *King v. United States,* 372 F.2d 383, 395 (D.C.Cir.1967); and the steps taken by the court to mitigate the effects of the error. *Id.,* citing *Gaither v. United States, supra.,* 413 F.2d at 1079.

In support of its conclusion that the error was harmless, the majority, pointing out that "the prosecutor's reference to potential consequences to Officer Williams's career was an isolated event that did not pervade the entire trial," 386 Md. at 159, 872 A.2d at 33, a factor that *Wilhelm* also recognized as important, 272 Md. at 425–26, 326 A.2d at 721, focuses on, and finds solace from, the trial court's comment, made contemporaneously with the petitioner's objection, that the jury understood that it was closing argument and would consider the prosecutor's statements as such, and the pre-argument instructions given the jury. *See* 386 Md. at 159–60, 872 A.2d at 33–34. These, it claims, ameliorated the error. To be sure, it cursorily addresses the closeness and centrality factors, conceding, as to the former, that the evidence was not "truly overwhelming," 386 Md. at 160–61, 872 A.2d at 34, but relying on the "relative lack of severity of the improper remarks, the lack of potential impact of the erroneous argument (greater veracity of police officer due to adverse employment consequences if he lied) on the defense's theory that Officer Williams' had a faulty memory (not that he lied)and the instruction given by the judge," *id.* at 161, 872 A.2d at 34–35, concludes that the petitioner was not prejudiced.

First, as indicated, it appears that the majority has applied the wrong standard: in addition to citing *Dorsey* seemingly only in passing, the cases on which it seems principally to have relied, either are not apposite, *see Degren, supra,* 352 Md. 400, 722 A.2d 887; *Henry v. State,* 324 Md. 204, 232, 596 A.2d 1024,

1038 (1991), or applied the wrong standard of review, *United States v. Boyd*, 54 F.3d 868, 872 (D.C.Cir.1995) and *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir.1992). For the error to be deemed "harmless, the Court, upon its own independent review of the record, must be able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey*, 276 Md. at 659, 350 A.2d at 678. It simply is not sufficient to be "confident that a reasonable jury would be able to properly fulfill its role and discern argument from evidence without undue prejudice to the defendant;"[12] 386 Md. at 160, 872 A.2d at 34, the Court has to be satisfied beyond a reasonable doubt that the jury did fulfill its role and discern argument from evidence without prejudicing the defendant. Nor is it sufficient merely to state that "[w]e could find in the record no indicia, nor did Petitioner identify any, of the jury's inability or refusal to follow these explicit instructions given by the trial court." 386 Md. 160,

---

**12.** The majority cites for this proposition *Young v. State*, 68 Md.App. 121, 510 A.2d 599 (1986) and *Wilhelm v. State*, 272 Md. 404, 425–26, 445, 326 A.2d 707, 721–22, 732 (1974). *Young* does not stand for that proposition. At the outset, it is important to note that the *Young* court did not find harmless error. For the benefit of the trial court on remand, however, the intermediate appellate court considered the correctness of jury instructions concerning the evaluation of the credibility of police officers. The defendant wanted the court to endorse the following instruction and, in fact, argued that the instruction was required to be given:

"A police officer's testimony should be considered by you just as any other evidence in this case, and in evaluating his credibility, you should use the same guidelines which you apply to the testimony of any other witness. In no event should you give any greater or lesser credence to the testimony of any witness merely because he is a police officer."

*Id.* at 136, 510 A.2d at 607. The Court of Special Appeals did not agree. Instead, it endorsed a portion of the instruction the trial court had given: "You are the sole judges of whether a witness should be believed, and in making this decision, you should apply your own common sense and everyday experiences in life. In determining whether a witness should be believed and what weight to give the testimony of that witness, you should carefully judge all the testimony and evidence and circumstances under which each witness has testified."

*Id.* at 136–37, 510 A.2d at 607.

872 A.2d 34 "Once error is established, the burden is on the State to show that it was harmless beyond a reasonable doubt." *Denicolis v. State,* 378 Md. 646, 658–59, 837 A.2d 944, 952 (2003). Harmless error cannot be established on an ambiguous record. *Taylor v. State,* 352 Md. 338, 351, 722 A.2d 65, 71 (1998).

In any event, *Brooks v. State,* 85 Md.App. 355, 360–361, 584 A.2d 82, 85 (1991) is inapposite. That case involved the propriety of the denial of a motion for mistrial "when curative instructions are given, [which] it is presumed . . . the jury can and will follow. . . ." *Id.* 360, 584 A.2d at 85, quoting *Brooks v. State,* 68 Md.App. 604, 613, 515 A.2d 225 (1986), *cert. denied,* 308 Md. 382, 519 A.2d 1283 (1987). Affirming the denial, the Court of Special Appeals explained:

> "There is no doubt but that the court fully apprised the jury of its obligation not to use the co-conspirators' testimony to support a guilty verdict. It did so on more than one occasion and, on each occasion, in a detailed fashion. There is, moreover, nothing in the verdict itself which suggests that the court's instructions were not heeded. Indeed, appellant does not point to any concrete evidence to that effect; he merely speculates, given the complexity of the task with which it was charged, that the jury could not possibly have discharged that task appropriately. That, of course, is totally insufficient. On the contrary, when one considers that the jury is presumed to be able to, and in fact will, follow curative instructions, it becomes manifest that there was no error."

There is absolutely no resemblance between that case and this one.

In support of its holding that the error in this case is harmless, the majority cites, in addition to *Degren, supra,* 352 Md. at 434–35, 722 A.2d at 903–04, *Henry v. State,* 324 Md. 204, 232, 596 A.2d 1024, 1038 (1991); *United States v. Boyd,* 54 F.3d 868, 872 (D.C.Cir.1995) and *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir.1992). None of those cases provides the needed support.

In *Degren*, the defendant argued that the prosecutor's comments that "[t]he number one reason why you should not believe what Sharon Degren says is nobody, nobody in this country has more reason to lie than a defendant in a criminal trial" and "this defendant has every reason to lie. She is a defendant" were erroneously allowed because, by referring to defendants in general and their motives to lie, rather than his motives, they effectively undermined the presumption of innocence, with which every defendant is clothed until proven guilty. 352 Md. at 431, 722 A.2d at 902. We rejected that argument, concluding, on the contrary, that the trial court had not abused its discretion in denying the defendant's motion for mistrial and for a curative instruction. We explained:

> "The prosecutor's comment that criminal defendants have a motive to lie did not bear directly on petitioner's guilt or innocence. Rather, the comment was made in response to the defense counsel's comments during closing argument that the jury should not believe the State's witnesses because they had various motives to lie. The prosecutor went on, after she made her remarks at issue, to argue other motives petitioner might have to lie. This Court has held that, under certain circumstances, a prosecutor's argument during rebuttal and in response to comments made by the defense during its closing are proper. *See Blackwell v. State*, 278 Md. 466, 481, 365 A.2d 545, 553–54 (1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977). *But see Johnson v. State*, 325 Md. 511, 517, 601 A.2d 1093, 1096 (1992). The trial court evidently determined that the prosecutor's comments were not improper, at least to the extent that they did not subvert the presumption of innocence, the only ground for mistrial argued by petitioner's counsel. Given the broad discretion afforded trial courts in making such determinations, we do not believe it abused this discretion in denying petitioner's motions for mistrial and for a curative instruction."

*Id.* at 431–32, 722 A.2d at 902. Later, to be sure, but only in dicta did the Court comment on the effect of the jury instructions given in the case on the presumption of innocence, concluding that the instructions so "clearly defined the jury's

role, the presumptions afforded the defendant, how to consider comments by the attorneys, and how to judge witness testimony," *Id.* at 435, 722 A.2d at 904, as to result in the prosecutor's comments, even if inappropriate, having no effect.[13]

*Henry* is to like effect. The challenged argument was:

"Ladies and gentlemen, I didn't make up a theory out of thin air and present it about ballistics. [Defense Counsel], if you don't like my theory and you come up with a theory, then let's see how it flies. Let's put our theories before these good people and let them decide. I didn't hear his theory.

"I put a theory before you, ladies and gentlemen, based upon the evidence in this case, and I am willing to let you examine it and stand here and stand by it. If you reject my theory, fine, so be it, but I put it up here.

"I submit to you that it is based upon the evidence in this case. It is not something that was dreamed up. If they have a theory I'm more than willing to hear it."

324 Md. at 229, 596 A.2d at 1036–37. The challenge was that the argument created the impression that the defense had some obligation to prove a "theory" of the case and, thus, its effect was "to indicate that the defense carries a burden which the law does not impose." *Id.* at 232, 596 A.2d at 1038. Upholding the trial court's overruling of the defendant's objection, the Court opined:

"We do not find that the prosecutor suggested that Henry had the burden to prove any element of the charges against him. The court thoroughly instructed the jury on the

---

**13.** The Court had earlier commented in a footnote that it harbored concern about the appropriateness of the prosecutor's remarks:

"In so holding, we, like the Court of Special Appeals, believe this comment may have been inappropriate. Under the facts of this particular case, the issue of motive to lie had been brought up first by the defense. We do not believe the State's Attorney's intent in stating criminal defendants have a motive to lie was nefarious. Nonetheless, it was an unprofessional and injudicious remark. We do not condone such comments and do not hold that in future cases and under different facts, such remarks always will be acceptable."
*Degren v. State,* 352 Md. 400, 432 n. 14, 722 A.2d 887, 902 n. 14 (1999).

State's burden of proof and told them that their verdicts should be based on the evidence.

"When viewed in its entire context, the prosecution's rebuttal in the instant case does not warrant a finding of reversible error. The State's Attorney was responding directly to remarks made by defense counsel in closing argument and was asking the jury to accept his theory of the case. *See Denny v. State*, 404 So.2d 824, 826 (Fla.App.1981). The judge properly instructed the jury on the applicable law, including the State's burden of proof. The prosecutor's rebuttal remarks could not have misled or prejudicially influenced the jury."

*Id.*

*Boyd* is particularly inapposite. There, although the defendant objected to the Government's closing argument, he did not state the specific ground. Therefore, concluding that "nothing in the context of defense counsel's unexplained objection made obvious the ground therefor," the court applied the plain error standard of review. Id. at 54 F.3d at 872. Certainly, that standard does not apply here. Similarly, a different standard than the *Dorsey* standard, required in Maryland, whether the "prosecutorial impropriety" "was so 'gross as probably to prejudice the defendant,'" was applied in *Martinez*. 981 F.2d at 871, quoting *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir.1988). Applying that standard, noting that the prosecutor's comment was simply an isolated misstatement, the court stated its belief that:

"It is unlikely that it prejudiced [the defendant].... Any possible prejudice that [the defendant] might have suffered was ameliorated by the trial court's instruction to the jury that 'the lawyers' statements ... and their arguments are not evidence.'... This instruction was sufficient to neutralize the prosecutor's slight impropriety.... Therefore, we conclude that the district court's ruling was not reversible error."

*Id.*

The factors identified by *Wilhelm*, the closeness of the case, the centrality of the issue affected by the error and the steps

taken to mitigate its effect, all militate against a finding of harmless error. There was only one witness who testified for the State and against the petitioner and it was through that witness that all of the evidentiary exhibits were introduced against the petitioner. The State's only witness did not go unchallenged; indeed, the thrust of the petitioner's defense was that the witness was not credible with respect to the petitioner's involvement in the crimes with which he was charged. The only issue in the case, in short, was whether the jury should believe Officer Williams's testimony. That issue is also the issue affected by the State's improper argument; it was the purpose of the argument to buttress the credibility of the Officer. And, as the majority concedes, the court never acknowledged that the argument was error; consequently, the court did absolutely nothing to mitigate the effect of the error.

We have stated frequently that where credibility is an issue and, thus, the jury's assessment of who is telling the truth is critical, an error affecting the jury's ability to assess a witness's credibility is not harmless error. *Martin v. State,* 364 Md. 692, 703, 775 A.2d 385, 391 (2001) (denial of opportunity to establish the bias or pecuniary interest of the witness); *Howard v. State,* 324 Md. 505, 517, 597 A.2d 964, 970 (1991) ("In a case that largely turned on whom the jury was going to believe, the improperly admitted evidence of the defendant's prior conviction may have been the weight which caused the jurors to accept one version rather than the other"); *State v. Cox,* 298 Md. 173, 185, 468 A.2d 319, 324–25 (1983) (error not harmless where, although some corroborating physical evidence, the prosecution's case was based on the testimony of the victim, on the basis of which, if shown not to be credible, the jury might not have been able to find guilt beyond a reasonable doubt). *See Newman v. State,* 65 Md.App. 85, 98, 499 A.2d 492 (1985) ( when the State's case depends virtually exclusively on the credibility of a witness, the bolstering of the witness's credibility by prior consistent statements cannot be harmless error).

This is so because the court reviewing the trial court error for prejudice plays a significantly different role and has a

function distinct from that of the trier of fact. I addressed that distinction, *albeit* in dissent, in *Ware v. State,* 360 Md. 650, 716–17, 759 A.2d 764, 799 (2000) (Bell, C.J., dissenting):

"Once it has been determined that error was committed, reversal is required unless the error did not influence the verdict; the error is harmless only if it did not play any role in the jury's verdict. The reviewing court must exclude that possibility 'beyond a reasonable doubt.'"

"Moreover, an appellate court reviewing a trial court verdict must apply the harmless error rule consistently with its role; it should not take on the role of the trier of fact and substitute its judgment for that of the jury or the trial court whose verdict is under review. That would be to usurp the function of the trier of fact and that is not allowed.... *See, e.g., Daniels v. State,* 24 Md.App. 1, 7, 329 A.2d 712, 716 (1974) ('We may not usurp the function of the jury by holding that the eyewitnesses should be believed over the alibi evidence.'). *See also Shelton v. State,* 198 Md. 405, 412, 84 A.2d 76, 80 (1951) ('This Court will not inquire into or measure the weight of the evidence, and will not reverse the judgment if there is any proper evidence before the jury on which to sustain a conviction.'); *Alexander v. Tingle,* 181 Md. 464, 467, 30 A.2d 737, 738 (1943) ('The Court had not the authority to direct the jury that the evidence established a certain fact even though the evidence was uncontradicted and highly persuasive. The Court could not thus usurp the function of the jury to weigh the credibility of the evidence.'); *Collins v. State,* 14 Md.App. 674, 679, 288 A.2d 221, 224 (1972) ('The weight of the evidence and the credibility of witnesses are matters within the realm of the jury.'); *Wilkins v. State,* 11 Md.App. 113, 127, 273 A.2d 236, 243 (1971) ('The weight of evidence and the credibility of the witnesses [are] for the jury.')."

(Footnote omitted). In addition,

" No matter how strong a case for conviction the State may present, even when the defense presents no evidence, the court may not direct a verdict for the State. See Maryland Rule 4–324, which, while providing that a defendant may

move for judgment of acquittal, Rule 4–324(a), . . . and the court may direct the entry of judgment in his or her favor if there is insufficient evidence, as a matter of law, Rule 4–324(b), makes no provision for the making of a motion for judgment by the State. Compare Maryland Rule 2–519, . . . the civil counterpart. [*State v. Lyles* ], 308 Md. 129, 135, 517 A.2d 761, 764 (1986). This is so because it is the trier of fact, whether the court or a jury, that must determine if the State has met its burden of proof. To make that determination, the trier of fact is required to find the facts and when, as is usually the case, there are credibility issues, to resolve them. That, in turn, involves weighing the evidence. Appellate courts do not find facts or weigh evidence, 'what evidence to believe, what weight to be given it, and what facts flow from that evidence are for the jury . . . to determine.' *Dykes v. State,* 319 Md. 206, 224, 571 A.2d 1251, 1260–[6]1 (1990). *See Gore v. State,* 309 Md. 203, 214, 522 A.2d 1338, 1341 (1987); *Wilson v. State,* 261 Md. 551, 566, 276 A.2d 214, 221 (1971); *Jacobs v. State,* 238 Md. 648, 650, 210 A.2d 722, 723–[2]4 (1965). Even when an appellate court assesses the sufficiency of the evidence, it does not weigh it, *see Clemson v. Butler Aviation–Friendship,* 266 Md. 666, 671, 296 A.2d 419, 422 (1972); *Gray v. Director, Patuxent Institution,* 245 Md. 80, 84, 224 A.2d 879, 881 (1966), it only determines if any evidence exists, on the basis of which a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 573 (1979); *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056, 1057 (1986). There is no reason that a harmless error analysis should permit it to do more."

*Rubin v. State,* 325 Md. 552, 596–97, 602 A.2d 677, 698–99 (1992) (Bell, J., dissenting) (footnotes omitted).

All of what the majority points to, and on which it relies, occurred prior to the error occurring. I confess to having difficulty understanding how instructions given with the expectation that there will be compliance and no error can moderate an error subsequently made. More difficult to

accept, or even understand, is the majority's reliance on the court's comment, made when the petitioner objected, stating the obvious, that the State's argument vouching for the State witness's credibility was argument of counsel and that the jury would take it as such. Argument of counsel may be proper or it may be, as in this case, improper. There is, or should be, a consequence when a party engages in improper argument; when it is a jury trial and the jury may well have been misled, that consequence is to order a new trial. That the jury is told that argument is not evidence does not address the effect that the improper argument may have had on the jury. This is of particular significance where, as in the case of a jury, it is impossible to determine whether and, if so, how, particular arguments affect, or may have affected, the jury's verdict.

I have often questioned this Court's application of the "harmless error" rule, believing both that it is over-used and misused. On the prior occasions, there has been evidence of the defendant's guilt in addition to the testimony, admitted or excluded, being challenged. *E.g., Rubin,* 325 Md. at 578–580, 589–590, 602 A.2d 677 (evidence so overwhelming that excluding the offending evidence would have made no difference in verdict); *Jensen v. State,* 355 Md. 692, 716, 736 A.2d 307, 320 (1999)(indicating, among other references to the evidence, that "four individuals testified that Jensen told them, or that they overheard him, either revealing the details or bragging about the killing"); *Ware,* 360 Md. at 679, 759 A.2d at 779 (in addition to the holding that the "form of the evidence reduced [the] prejudicial impact" of an erroneously admitted statement of a State's witness, there was considerable other evidence supporting the defendant's guilt). I had thought, until now, that, where the only issue was credibility and it had to be resolved by the jury believing one witness over another, "harmless error" would not, and indeed, could not apply.

Applying the *Dorsey* test to the facts in this case, there simply is no logical basis on which any rational reviewing court could be persuaded beyond a reasonable doubt that the State's improper closing argument, vouching, as it does, for the credibility of Officer Williams, the State's only witness, whose

credibility was challenged, did not contribute to the guilty verdict returned against the petitioner. It was not harmless error.

I dissent.