(April 3, 2014)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLEVELAND LOVETT, Appellant. [984 NYS2d 299]—

Judgment, Supreme Court, New York County (Edward J. McLaughlin, J.), rendered August 19, 2003, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the first and third degrees and reckless endangerment in the first degree, and sentencing him to an aggregate term of 27⅓ years to life, modified, on the law, to the extent of vacating the sentence on the reckless endangerment count and remitting for resentencing pursuant to CPL 470.20; order, same court and Justice, entered on or about December 7, 2005, which denied defendant's CPL 440.10 motion to vacate the judgment, affirmed; and order, same court and Justice, entered on or about February 14, 2006, which denied defendant's motion for

resentencing pursuant to the Drug Law Reform Act (L 2004, ch 738), affirmed.

The court properly determined that substantial justice dictated the denial of defendant's resentencing application (*see generally People v Gonzalez*, 29 AD3d 400 [1st Dept 2006], *lv denied* 7 NY3d 867 [2006]). Resentencing "involves a complex balancing of several sets of compelling and in some respects competing concerns" (*People v Sosa*, 18 NY3d 436, 442 [2012]), requiring the "exercise of judicial discretion to determine whether relief to an eligible applicant is in the end consonant with the dictates of substantial justice" (*id.* at 443), and courts may deny the applications of persons who "have shown by their conduct that they do not deserve relief from their sentences" (*People v Paulin*, 17 NY3d 238, 244 [2011]).

The record demonstrates that the court considered the totality of the circumstances and found that defendant did not deserve relief from his original sentence, only after the court balanced defendant's extensive criminal history, defendant's denial of any responsibility at trial and sentencing, and the circumstances of the underlying offenses, against the evidence of defendant's postincarceration rehabilitation. Defendant's extensive criminal record in New York and New Jersey, including five felonies, is replete with crimes of violence that were very serious, regardless of whether they would technically qualify as New York violent felonies. Among other crimes, defendant has been convicted of possession of a loaded handgun and ammunition, aggravated assault with a deadly weapon, and home invasion robbery and burglary of another drug dealer's home, during which defendant covered a 12-year-old boy's head in a pillow case. This last offense was committed after defendant absconded after being released on bail on drug charges in New York. Defendant also has prior convictions for possession of large quantities of drugs, including near a school, and drug selling paraphernalia. The instant crimes not only involved a large quantity of drugs, but also a reckless high-speed car chase that resulted in injuries to innocent persons, property damage, and the complete sealing off of the West Side Highway for hours.

When interviewed by the Probation Department following his conviction, defendant "adamantly maintain[ed] his innocence." He reiterated this at sentencing, stating, "I don't think I deserve any sentence. I think I deserve my freedom." Defendant's insistence on his innocence notwithstanding the overwhelming evidence underscores his complete lack of insight into the wrongful nature of his conduct and a lack of acceptance of responsibility for the harm he caused himself and others.

Thus, notwithstanding any injudicious remarks the court may have made at the time of sentencing and resentencing, the record supports the court's conclusion that the aggravating factors outweighed the mitigating factors cited by defendant, such as family ties and participation in prison rehabilitation programs (*see e.g. People v Ford*, 103 AD3d 492 [1st Dept 2013]), and the court properly exercised its discretion in determining that substantial justice dictated denial of the motion (*see People v Vargas*, 113 AD3d 570 [1st Dept 2014]).

With regard to defendant's direct appeal, there is a sentencing error which warrants remitting this case for further proceedings in accordance with CPL 470.20. At sentencing, the Assistant District Attorney pointed out that defendant, due to his extensive felony record, was actually eligible for sentencing on the reckless endangerment count to a life sentence as a discretionary persistent felony offender. However, the People only sought to have him sentenced as a second felony offender. The sentencing minutes reflect that the court sentenced defendant as a second felony offender to $3\frac{1}{2}$ to 7 years on the reckless endangerment count, consistent with the judge's stated intention to impose the maximum sentence for that count and to run it consecutive to the concurrent sentences on the drug counts. Such a sentence would also be consistent with defendant having been sentenced as a second felony offender on one of the drug counts. However, in what can only be understood to be a scrivener's error by the clerk of the court that was then endorsed by the court, the worksheet and the commitment papers transmitted to the Department of Correction reflect a sentence of $2\frac{1}{3}$ to 7 years, which is not a legal sentence for a second felony offender.

We recognize that this particular legal error is not raised by defendant, but there are several cases that hold that courts may correct their own sentencing errors, as this is within their " 'inherent power to correct their records, where the correction relates to mistakes, or errors, which may be termed clerical in their nature, or where it is made in order to conform the record to the truth' " (*People v Minaya*, 54 NY2d 360, 364 [1981], *cert denied* 455 US 1024 [1982], quoting *Bohlen v Metropolitan El. Ry. Co.*, 121 NY 546, 550-551 [1890]). This power is limited to "situations where the record in the case clearly indicates the presence of judicial oversight based upon an accidental mistake of fact or an inadvertent misstatement that creates ambiguity in the record" (*People v Richardson*, 100 NY2d 847, 853 [2003]). The corrective actions an intermediate appellate court may take on criminal appeals are circumscribed by CPL 470.20. This pro-

vision allows the Appellate Division, upon finding that an illegal sentence was imposed, to choose whether to remit to the trial court for resentencing or to substitute its own legal sentence (*see People v LaSalle*, 95 NY2d 827 [2000]). Under these circumstances, we remit to the trial court for resentencing on the reckless endangerment count. In light of this remittitur, it is premature to reach the issue of whether imposition of a consecutive sentence for this count would constitute an abuse of discretion.

The court properly denied defendant's motion to vacate the judgment made on the ground of ineffective assistance of counsel. Although several portions of the court's jury instructions were similar to language we disapproved in *People v Johnson* (11 AD3d 224 [1st Dept 2004], *lv denied* 4 NY3d 745 [2004]), counsel's failure to object to them in a case tried before *Johnson* was decided fell within the range of reasonable competence. Unlike the instructions in *Johnson*, the disapproved language in the charge was made in the context of the requirement of a unanimous verdict, and did not misstate the constitutionally required standard of proof or compromise defendant's right to a fair trial. Since the jury could not have been misled as to the People's burden, which the court consistently defined as beyond a reasonable doubt, counsel's failure to object to the challenged portions did not deprive defendant of his right to effective assistance of counsel (*see People v Miller*, 64 AD3d 471 [1st Dept 2009], *lv denied* 13 NY3d 798 [2009]; *People v Alvarez*, 54 AD3d 612 [1st Dept 2008], *lv denied* 11 NY3d 853 [2008]).

We have considered defendant's remaining arguments and find them unavailing. Concur—Mazzarelli, Friedman and Feinman, JJ. Tom, J.P., and Freedman, J., dissent in part in separate memoranda as follows:

Tom, J.P. (dissenting in part). Defendant appeals, as excessive, a sentence of $27^1/_3$ years to life, aggregating concurrent sentences of 25 years to life and $12^1/_2$ years to 25 years for criminal possession of a controlled substance in the first and third degrees with a consecutive sentence of $2^1/_3$ years to 7 years for reckless endangerment in the first degree. While I concur in the majority's disposition of the appeal from the orders, I find the sentence imposed to be excessive to the extent that it subjects defendant to a harsher penalty than that prescribed for murder. Because public confidence in the fairness of the criminal justice system is promoted by consistency between the severity of the penalty imposed and the seriousness of the offense, I would modify the judgment to provide that the sentences run concurrently.

Defendant's reckless endangerment conviction resulted from his attempt to flee from two detectives who had stopped his vehicle for running a red light. This Court recognizes the public hazard presented by the use of an automobile in the attempt to evade police (*People v Nieves*, 205 AD2d 173 [1st Dept 1994], *affd* 88 NY2d 618 [1996]; *see also People v Stokes*, 215 AD2d 225 [1st Dept 1995], *affd* 88 NY2d 618 [1996]). A primary consideration in imposing sentence is "the harm caused or contemplated by the defendant" (*People v Notey*, 72 AD2d 279, 283 [2d Dept 1980], citing Model Penal Code § 7.01 [2]).* Thus, in *Nieves* and *Stokes*, which involved the death of a pedestrian struck by a getaway vehicle, the driver was sentenced to a cumulative prison term of 25 years to life for felony murder, reckless endangerment and other crimes (*Stokes*, 215 AD2d at 225) and an accomplice was sentenced to a term of 20 years to life for felony murder (*Nieves*, 205 AD2d at 185-186).

The only life-threatening injuries involved in the matter at bar are those sustained by defendant when he fled from the rented car he was driving and jumped from an overpass, in the dark, without realizing that there was a 60-foot drop to the pavement below. As a result of the fall, defendant underwent extensive surgery, including the fusion of his elbow joints and the placement of screws in his arms, legs and pelvis. At the time of sentence, he was confined to a wheelchair, and his upper-body movement is permanently limited. Another appropriate consideration is the hardship that imprisonment presents to the disabled defendant (*Notey*, 72 AD2d at 283). Furthermore, even if defendant is deemed to be beyond rehabilitation, he now represents a significantly reduced threat to public safety, which greatly diminishes the imperative to isolate him from the public. And while defendant's criminal history is extensive, those offenses involving violence are, given his present condition, unlikely to be repeated, which would include the instant crime of reckless endangerment and prior offenses of car theft and vehicular assault, as well as home invasion and burglary. As to deterrence, a would-be felon is unlikely to be further dissuaded from committing a criminal act in the furtherance of eluding police when faced with a prospective sentence of 28½ years to life (as corrected) rather than a mere 25 years to life. The

---

* The relevant considerations in determining sentence suggested by the American Law Institute are "the harm caused or contemplated by the defendant, the excuse or provocation, if any, for the defendant's conduct, the restitution which may compensate for the harm done, the prior criminal history of the defendant, the likelihood of recurrence of the defendant's conduct, and whether imprisonment would result in excessive hardship to the defendant" (*Notey* at 283; Model Penal Code § 7.01 [2]).

distinction is not apt to be appreciated by a felon preoccupied with the immediate task of evading imminent capture. Thus, the deterrent effect of imposing consecutive sentences is negligible.

Retribution is a recognized objective of criminal punishment (*Notey* at 282). But if a sentence of 25 years to life is appropriate for a getaway driver convicted of felony murder and reckless endangerment, why is a greater punishment warranted for defendant in the present case, convicted of only drug possession and reckless endangerment? Finally, to visit greater retribution on a defendant who was permanently disabled as a result of his crime serves no compelling penological objective (*Notey*, 72 AD2d at 282). The consecutive sentences imposed in this matter do not promote fairness in our criminal justice system and can only be regarded as unduly harsh and excessive.

Accordingly, the judgment should be modified to provide that the sentences be served concurrently.

Freedman, J. (dissenting in part). I respectfully dissent only to the extent that, in the interests of justice, I would vacate the sentence imposed for the A-I narcotic felony conviction and grant defendant's motion for resentencing pursuant to the Drug Law Reform Act of 2004 (L 2004, ch 738, § 23) and Penal Law § 70.71 (4) (b) (i) for narcotic felonies committed prior to January 13, 2005, and would replace it with a determinate sentence of 20 years plus five years of postrelease supervision. I would deny defendant's CPL 440.10 motion to vacate his conviction based on ineffective assistance of counsel, despite failure to object to a clearly erroneous charge, because of the overwhelming evidence of defendant's guilt.

After allegedly running a red light, defendant resisted an attempt by officers in an unmarked vehicle to pull him over, and led them in a high speed chase, colliding with several cars, injuring passengers in those cars, abandoning his wrecked car, and ultimately climbing over a wall on the West Side Highway. He then fell 60 feet to the road below where he was found unconscious and gravely injured. The pursuing police officers found 8³/₈ ounces of cocaine secreted in the trunk under the spare tire of defendant's rented vehicle. Defendant was charged with criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]), criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and reckless endangerment in the first degree (Penal Law § 120.25) and was offered a sentence of 12 years to cover all of the charges. He rejected the offer, went to trial, and was convicted of all three felonies.

Defendant, then age 29, had five prior felony convictions, four of which occurred in New Jersey and three of which involved drug possession. All occurred between 1991 and 1997. None of his prior convictions constituted violent predicates, and he was not sentenced here as a prior violent predicate felon. Nevertheless, on August 19, 2003, the court imposed the maximum sentence of 25 to life for the first-degree possession count, $12^{1}/_{2}$ to 25 years for the third-degree possession count, with the sentences to run concurrently, and $2^{1}/_{3}$ to 7 years for the first-degree reckless endangerment count, with that sentence to run consecutively to the drug crime sentences.

On June 10, 2005 defendant moved for resentencing of the maximum 25-to-life sentence for the A-I felony under section 23 of chapter 738 of the Laws of 2004 (DLRA), which the court denied on February 14, 2006. Defendant argued that the underlying possession crime was nonviolent and was unrelated to gang activity or any major trafficking network, for which he claimed the severest sentences were designed. Although the quantity of drugs obtained from the rented vehicle that he drove, wrecked and abandoned, was sufficient even under the most recent DLRA to constitute an A-I felony, defendant averred that it was barely above the 8-ounce minimum and that sentencing to the maximum for an A-I felony, 25 to life, was excessive.

Defendant points to his near perfect prison record in the 11 years that he has been incarcerated, with one tier III infraction caused by other inmates setting fire to his cell while he was in the library and resulting in his being put into protective custody, and two minor tier II infractions. He has been described as pleasant, polite and cooperative by prison personnel. He also furnishes a large number of letters from family members, community members, and friends attesting to his devotion to his family and concern for his community and church. Defendant also avers that he was accepted into the Family Reunion Plan based on being on the list for recommended programs and his record of positive behavioral comportment. Defendant further contends that he was addicted to alcohol and drugs and that his prior felonies were related to drug use, as indicated by his presentence report. Finally, it is noted that defendant was unconscious after his 60-foot fall, was hospitalized for four months thereafter and underwent multiple surgeries to repair the fractures in his arms, legs and pelvis. As a result of fusions to both of his elbows, he very limited upper-body mobility. Because of his severe physical limitations, he has not been able to take advantage of all of the prison programs offered, but he has participated in all that he is able to.

The People respond by pointing to defendant's five felony convictions, noting that defendant spent 5 of the 10 years immediately prior to the current conviction incarcerated, but also describe facts relating to those convictions for which there is no support in the record. They also point to defendant's failure to take responsibility for his actions at the time of sentencing denying the charges against him despite the jury's verdict.

Although defendant was eligible under the statute, Justice McLaughlin, in denying defendant's request for resentencing, demonstrated the same contempt for him that he had when he first sentenced him. At the first sentencing, the Justice said, "If there is a parole officer, if there is a parole board, who ever thinks there is a reason to release you from jail, they should be fired. You are sentenced as best as possible to die in jail." At the resentencing denial, while acknowledging that defendant may have become "somewhat altered" he called defendant "a totally amoral individual" and stated that defendant's rehabilitation "simply [did not] change [the court's] assessment of his complicity." The court also said that defendant "does not merit the consideration that the law had in mind for the weak, the misguided, the duped, who are traditionally the mule-like people or the addicted sellers of drugs who were within the contemplation of the statute." People like defendant "simply cannot fall appropriately within the contemplation of the statute."

The 2004 DLRA law specifically charges the court with "offer[ing] an opportunity for a hearing and . . . [u]pon its review of the submissions and the findings of fact made in connection with the application, the court shall, unless substantial justice dictates that the application should be denied, in which event the court shall issue an order denying the application, specify and inform such person of the term of a determinate sentence of imprisonment it would impose upon such conviction, as authorized for a class A-I felony" (L 2004, ch 738, § 23). The court "may . . . consider the institutional record of confinement of such person" (id.). I believe that substantial justice, together with consideration of defendant's excellent institutional record, warrants granting resentencing on the A-I felony in this case. The 8³/₈ ounces of cocaine found in defendant's car is just above the minimum for an A-I felony under current law, and defendant has participated in as many rehabilitative programs during his 11 years of incarceration as he could. The letters from his family, including his wife, son, mother-in-law and cousin, and from others in the community, indicate that he has an extensive support network. Although defendant's total recklessness, for which he has also received the maximum consecutive sentence,

contributed to the court's assessment of him as an "amoral" person, he has been severely punished for those utterly reckless actions by his self-inflicted wounds and permanent disabilities. His arrogant behavior at trial and sentencing, while not commendable, can be attributed, at least in part, to his lack of memory of the events that led to his long hospitalization and multiple surgeries. He did not, as the court implied, accuse police officers of pushing him over the wall, and did have a history of substance abuse dating back to his early teens.

I find the court's manifestation of utter contempt for defendant at the time of sentencing, both the initial sentencing and in response to the resentencing application, both injudicious and violative of the strong presumption favoring resentencing. We have reversed denials of resentencing applications where favorable prison records indicate rehabilitation (*People v Pratts*, 93 AD3d 435 [1st Dept 2012]; *see also People v Nunziata*, 87 AD3d 555 [2d Dept 2011]), in the face of an extensive record of felony and misdemeanor convictions (*People v Cephas*, 90 AD3d 557 [1st Dept 2011]), including violent felonies (*People v Lattimore*, 92 AD3d 617 [2012]).

The sentence of 25 to life, consecutive to the $2^1/_3$ to 7 years for the reckless endangerment count, is greater than that given to most murderers. While defendant's recklessness, for which he duly received the maximum sentence, caused property damage and soft-tissue injuries, nothing that he did indicated an intent to cause injury or death to any individual, nor was he charged with or convicted of any intent to cause bodily harm. Moreover, the majority alleges details about defendant's New Jersey convictions which derive from hearsay contained in the People's affirmation in response to defendant's petition to be resentenced and which are not in the record before us. Defendant was sentenced to or incarcerated for relatively short periods for those prior crimes, which was why he was not incarcerated at the time of this crime. For these reasons, I would reduce defendant's drug conviction sentence to a determinate sentence of 20 years, five years above the minimum.

Simultaneously with his application for resentencing under the DLRA of 2004, on June 10, 2005, defendant moved to have his conviction vacated pursuant to CPL 440.10, alleging ineffective assistance of counsel based on his attorney's failure to object to jury instructions that seemingly shifted the burden of proof and called into question the beyond a reasonable doubt standard. Specifically, the court gave the following instructions: "During the course of a criminal trial every accused, every defendant in a criminal case is entitled to every reasonable infer-

ence which can be drawn from the evidence. And if there's a situation where two inferences are of equal weight and strength, one inference—one factual inference that is consistent with guilt and the other factual inference is consistent with innocence, then any jury is required to find the factual inference of innocence.

"Now that relates to when you are trying to find facts in the jury room . . . my suggestion, which you do not have to follow, is that you attend to and address and try to resolve only the factual things that are necessary for you to make a decision about whether or not the prosecution has proven the elements of the crime beyond a reasonable doubt."

The court further charged: "Now, when you get into the jury room there may be differences of opinion. You may hear things that surprise you, that is what happens in deliberations in elections. 50.1 beats 49.9 each and every time, whether you're voting for president or the new American Idol, it's 50.1 beats 49.9 all the time. For over 225 years juries have been unanimously deciding cases, and they come from the same pool, do the voting jurors as the voting electorate.

"So how is it possible that people in elections can't agree at all on a candidate, they have never voted anybody in unanimously, and yet unanimously decide cases? The clear and obvious answer is during the course of deliberations, people change their minds."

In 2004, this Court reversed a conviction and remanded the case for a new trial when the same Justice gave the exact same charge (*People v Johnson*, 11 AD3d 224 [1st Dept 2004], *lv denied* 4 NY3d 745 [2004]). The Court stated that it had "repeatedly expressed its disapproval of the 'two-inference' charge" (*id.* at 224). The Court went on to find the 50.1 beats 49.9 language as potentially confusing and undermining of the jury's understanding of the presumption of innocence, implying that the jury could use the preponderance of evidence rather than the beyond a reasonable doubt standard (*People v Johnson* at 227). However, unlike counsel in *Johnson*, defense counsel in this case, failed to object to the charge.

Since the Justice did articulate the beyond a reasonable doubt burden and the overall tenor of the charge was accurate, together with the overwhelming evidence of reckless behavior presented by the People, I do not believe that the failure to object to the erroneous charge alone constituted ineffective assistance of counsel. Therefore, I would not reverse the convictions based on ineffective assistance of counsel and would affirm the 2$^1$/$_3$ to 7 years consecutive sentence for reckless endangerment.