Freedman, J.
(dissenting in part). I respectfully dissent only to the extent that, in the interests of justice, I would vacate the sentence imposed for the A-I narcotic felony conviction and grant defendant’s motion for resentencing pursuant to the Drug Law Reform Act of 2004 (L 2004, ch 738, § 23) and Penal Law § 70.71 (4) (b) (i) for narcotic felonies committed prior to January 13, 2005, and would replace it with a determinate sentence of 20 years plus five years of postrelease supervision. I would deny defendant’s CPL 440.10 motion to vacate his conviction based on ineffective assistance of counsel, despite failure to object to a clearly erroneous charge, because of the overwhelming evidence of defendant’s guilt.
After allegedly running a red light, defendant resisted an attempt by officers in an unmarked vehicle to pull him over, and led them in a high speed chase, colliding with several cars, injuring passengers in those cars, abandoning his wrecked car, and ultimately climbing over a wall on the West Side Highway. He then fell 60 feet to the road below where he was found unconscious and gravely injured. The pursuing police officers found 83/s ounces of cocaine secreted in the trunk under the spare tire of defendant’s rented vehicle. Defendant was charged with criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]), criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and reckless endangerment in the first degree (Penal Law § 120.25) and was offered a sentence of 12 years to cover all of the charges. He rejected the offer, went to trial, and was convicted of all three felonies.
*434 Defendant, then age 29, had five prior felony convictions, four of which occurred in New Jersey and three of which involved drug possession. All occurred between 1991 and 1997. None of his prior convictions constituted violent predicates, and he was not sentenced here as a prior violent predicate felon. Nevertheless, on August 19, 2003, the court imposed the maximum sentence of 25 to life for the first-degree possession count, 1272 to 25 years for the third-degree possession count, with the sentences to run concurrently, and 27s to 7 years for the first-degree reckless endangerment count, with that sentence to run consecutively to the drug crime sentences.
On June 10, 2005 defendant moved for resentencing of the maximum 25-to-life sentence for the A-I felony under section 23 of chapter 738 of the Laws of 2004 (DLRA), which the court denied on February 14, 2006. Defendant argued that the underlying possession crime was nonviolent and was unrelated to gang activity or any major trafficking network, for which he claimed the severest sentences were designed. Although the quantity of drugs obtained from the rented vehicle that he drove, wrecked and abandoned, was sufficient even under the most recent DLRA to constitute an A-I felony, defendant averred that it was barely above the 8-ounce minimum and that sentencing to the maximum for an A-I felony, 25 to life, was excessive.
Defendant points to his near perfect prison record in the 11 years that he has been incarcerated, with one tier III infraction caused by other inmates setting fire to his cell while he was in the library and resulting in his being put into protective custody, and two minor tier II infractions. He has been described as pleasant, polite and cooperative by prison personnel. He also furnishes a large number of letters from family members, community members, and friends attesting to his devotion to his family and concern for his community and church. Defendant also avers that he was accepted into the Family Reunion Plan based on being on the list for recommended programs and his record of positive behavioral comportment. Defendant further contends that he was addicted to alcohol and drugs and that his prior felonies were related to drug use, as indicated by his presentence report. Finally, it is noted that defendant was unconscious after his 60-foot fall, was hospitalized for four months thereafter and underwent multiple surgeries to repair the fractures in his arms, legs and pelvis. As a result of fusions to both of his elbows, he very limited upper-body mobility. Because of his severe physical limitations, he has not been able to take advantage of all of the prison programs offered, but he has participated in all that he is able to.
*435 The People respond by pointing to defendant’s five felony convictions, noting that defendant spent 5 of the 10 years immediately prior to the current conviction incarcerated, but also describe facts relating to those convictions for which there is no support in the record. They also point to defendant’s failure to take responsibility for his actions at the time of sentencing denying the charges against him despite the jury’s verdict.
Although defendant was eligible under the statute, Justice McLaughlin, in denying defendant’s request for resentencing, demonstrated the same contempt for him that he had when he first sentenced him. At the first sentencing, the Justice said, “If there is a parole officer, if there is a parole board, who ever thinks there is a reason to release you from jail, they should be fired. You are sentenced as best as possible to die in jail.” At the resentencing denial, while acknowledging that defendant may have become “somewhat altered” he called defendant “a totally amoral individual” and stated that defendant’s rehabilitation “simply [did not] change [the court’s] assessment of his complicity.” The court also said that defendant “does not merit the consideration that the law had in mind for the weak, the misguided, the duped, who are traditionally the mule-like people or the addicted sellers of drugs who were within the contemplation of the statute.” People like defendant “simply cannot fall appropriately within the contemplation of the statute.”
The 2004 DLRA law specifically charges the court with “offering] an opportunity for a hearing and . . . [u]pan its review of the submissions and the findings of fact made in connection with the application, the court shall, unless substantial justice dictates that the application should be denied, in which event the court shall issue an order denying the application, specify and inform such person of the term of a determinate sentence of imprisonment it would impose upon such conviction, as authorized for a class A-I felony” (L 2004, ch 738, § 23). The court “may . . . consider the institutional record of confinement of such person” (id.). I believe that substantial justice, together with consideration of defendant’s excellent institutional record, warrants granting resentencing on the A-I felony in this case. The 83/s ounces of cocaine found in defendant’s car is just above the minimum for an A-I felony under current law, and defendant has participated in as many rehabilitative programs during his 11 years of incarceration as he could. The letters from his family, including his wife, son, mother-in-law and cousin, and from others in the community, indicate that he has an extensive support network. Although defendant’s total recklessness, for which he has also received the maximum consecutive sentence, *436 contributed to the court’s assessment of him as an “amoral” person, he has been severely punished for those utterly reckless actions by his self-inflicted wounds and permanent disabilities. His arrogant behavior at trial and sentencing, while not commendable, can be attributed, at least in part, to his lack of memory of the events that led to his long hospitalization and multiple surgeries. He did not, as the court implied, accuse police officers of pushing him over the wall, and did have a history of substance abuse dating back to his early teens.
I find the court’s manifestation of utter contempt for defendant at the time of sentencing, both the initial sentencing and in response to the resentencing application, both injudicious and violative of the strong presumption favoring resentencing. We have reversed denials of resentencing applications where favorable prison records indicate rehabilitation (People v Pratts, 93 AD3d 435 [1st Dept 2012]; see also People v Nunziata, 87 AD3d 555 [2d Dept 2011]), in the face of an extensive record of felony and misdemeanor convictions (People v Cephas, 90 AD3d 557 [1st Dept 2011]), including violent felonies (People v Lattimore, 92 AD3d 617 [2012]).
The sentence of 25 to life, consecutive to the 2Vs to 7 years for the reckless endangerment count, is greater than that given to most murderers. While defendant’s recklessness, for which he duly received the maximum sentence, caused property damage and soft-tissue injuries, nothing that he did indicated an intent to cause injury or death to any individual, nor was he charged with or convicted of any intent to cause bodily harm. Moreover, the majority alleges details about defendant’s New Jersey convictions which derive from hearsay contained in the People’s affirmation in response to defendant’s petition to be resentenced and which are not in the record before us. Defendant was sentenced to or incarcerated for relatively short periods for those prior crimes, which was why he was not incarcerated at the time of this crime. For these reasons, I would reduce defendant’s drug conviction sentence to a determinate sentence of 20 years, five years above the minimum.
Simultaneously with his application for resentencing under the DLRA of 2004, on June 10, 2005, defendant moved to have his conviction vacated pursuant to CPL 440.10, alleging ineffective assistance of counsel based on his attorney’s failure to object to jury instructions that seemingly shifted the burden of proof and called into question the beyond a reasonable doubt standard. Specifically, the court gave the following instructions: “During the course of a criminal trial every accused, every defendant in a criminal case is entitled to every reasonable infer *437 ence which can be drawn from the evidence. And if there’s a situation where two inferences are of equal weight and strength, one inference — one factual inference that is consistent with guilt and the other factual inference is consistent with innocence, then any jury is required to find the factual inference of innocence.
“Now that relates to when you are trying to find facts in the jury room . . . my suggestion, which you do not have to follow, is that you attend to and address and try to resolve only the factual things that are necessary for you to make a decision about whether or not the prosecution has proven the elements of the crime beyond a reasonable doubt.”
The court further charged: “Now, when you get into the jury room there may be differences of opinion. You may hear things that surprise you, that is what happens in deliberations in elections. 50.1 beats 49.9 each and every time, whether you’re voting for president or the new American Idol, it’s 50.1 beats 49.9 all the time. For over 225 years juries have been unanimously deciding cases, and they come from the same pool, do the voting jurors as the voting electorate.
“So how is it possible that people in elections can’t agree at all on a candidate, they have never voted anybody in unanimously, and yet unanimously decide cases? The clear and obvious answer is during the course of deliberations, people change their minds.”
In 2004, this Court reversed a conviction and remanded the case for a new trial when the same Justice gave the exact same charge (People v Johnson, 11 AD3d 224 [1st Dept 2004], lv denied 4 NY3d 745 [2004]). The Court stated that it had “repeatedly expressed its disapproval of the ‘two-inference’ charge” (id. at 224). The Court went on to find the 50.1 beats 49.9 language as potentially confusing and undermining of the jury’s understanding of the presumption of innocence, implying that the jury could use the preponderance of evidence rather than the beyond a reasonable doubt standard (People v Johnson at 227). However, unlike counsel in Johnson, defense counsel in this case, failed to object to the charge.
Since the Justice did articulate the beyond a reasonable doubt burden and the overall tenor of the charge was accurate, together with the overwhelming evidence of reckless behavior presented by the People, I do not believe that the failure to object to the erroneous charge alone constituted ineffective assistance of counsel. Therefore, I would not reverse the convictions based on ineffective assistance of counsel and would affirm the 2Vs to 7 years consecutive sentence for reckless endangerment.